# KANSAS CITY v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY et al., Appellants.

## (No. 1.)

### In Banc, July 20, 1910.

1. **ASSESSMENT OF BENEFITS: Street: No Benefit: Invalid.** A city is not entitled to a judgment assessing damages and benefits against a property-owner incident to the grading of a street, if the grading of the street will not result in any benefit to the property in the benefit district or be of any use to the public.

2. ———: ———: ———: ———: **Dependent on Viaduct.** And where it can be of no utility or benefit to the property in the benefit district to grade the street unless the city also constructs a long viaduct, there must be some stronger assurance that the viaduct will be constructed than the oral testimony of witnesses that the plan had been thoroughly discussed by city officials and they had decided it should be done, but could not proceed because the city had no money applicable to the purpose, before benefits can be assessed against property in the benefit district. The evidence should at least show that the city has taken some official action to construct the viaduct, which would make the grading of the street a public utility and a general benefit, where, as in this case, the street would be a positive injury without the viaduct. [Distinguishing, Kansas City v. Hyde, 196 Mo. 498.]

Appeal from Jackson Circuit Court.—*Hon. Henry L. McCune*, Judge.

REVERSED AND REMANDED (*with directions*).

230 Sup—24

*Dana, Cowherd & Ingraham, M. A. Lowe, Sebree, Conrad & Wendorff, Johnson & Lucas* and *Samuel W. Sawyer* for appellants.

(1) Speculation about the assessment of benefits is just as wrong as speculation as to assessment of damages. Both are condemned by the law. Hutt v. Chicago, 132 Ill. 352; Ice Co. v. City, 147 Ill. 327; Hook v. Railroad, 133 Mo. 322; Isom v. Railroad, 36 Miss. 312; Railroad v. Blackshire, 10 Kas. 488; Railroad v. County, 1 Allen 331; Brown v. Railroad, 5 Gray 35; Wreckler v. City, 61 Ill. 149; Mantorville v. Stengler-land, 101 Minn. 488; McCusick v. City, 46 N. W. 769; Munkartz v. Railroad, 64 Wis. 403; Pittsburg Co. v. Rose, 74 Pa. 369; Pinkham v. Chelmsford, 109 Mass. 225; Chicago v. Donagan, 196 Ill. 522. (2) It appears undisputed in this record that the city had no plan for the viaduct, so often referred to by the city's witnesses. It had taken no step to build it. For aught that appears in the record it may never be built. Benefits must not be based on any speculation. Hook v. Railroad, 133 Mo. 322; Hutt v. Chicago, 132 Ill. 352; Ice Co. v. Chicago, 147 Ill. 327.

*John G. Park, H. M. Beardsley* and *John G. Schaich* for respondent; *Jno. T. Harding* of counsel.

The court properly permitted testimony concerning the condemnation proceedings and the viaduct to be built by the city. Kansas City v. Hyde, 196 Mo. 498; Chamberlain v. Cleveland, 34 Oh. St. 567; Dickson v. Racine, 65 Wis. 306; Orth v. Milwaukee, 92 Wis. 230; Lingle v. Commissioners, 222 Ill. 393.

VALLIANT, J.—This is a proceeding instituted by Kansas City to assess the damages and benefits incident to the changing of the grade of Twelfth street from Broadway west to a point 270 feet west of Summit street. The proceeding arose out of the following

state of facts, as we gather them from the statement of the case in the brief for the respondent.

In the western part of the city, south of the Missouri, lies a considerable tract which is called the West Bottoms. In the Bottoms are the tracts of many railroads, freight houses, and a union station, besides many business houses of various kinds. The general lay of the land is north and south. Twelfth street runs east and west, crossing the Bottoms at or about right angles; it is one of the principal thoroughfares of the city. On the east side of the Bottoms a steep bluff rises. Coming from the east on Twelfth street the traffic ends when it comes to the bluff, except traffic by street railway, which is carried on a viaduct from that point across or over the Bottoms. The viaduct was constructed by the street railway company, and is not available or suitable for any other than street railway travel. Twelfth street, from Broadway to the point mentioned, 270 feet west of Summit street, crosses four streets, Washington, Pennsylvania, Jefferson and Summit. From the brow of the bluff going east the grade of Twelfth street rises, varying from six to nine per cent, until Washington street is reached, then it falls to Broadway. The change in the grade of Twelfth street required by the city ordinance will cause a cut from sixteen to eighteen feet deep at Washington street, and the depth thence to the objective point will vary according to the natural grade, to bring the street on a level with Broadway. When the street is cut down to that grade there will still be an abrupt bluff about eight feet high.

On the other side of the Bottoms, from Santa Fe street to Liberty street, a distance of three blocks, Twelfth street is only thirty feet wide, having three shallow blocks abutting it on the north; these blocks are only thirty feet deep; they separate Twelfth street from Eleventh street, which latter street is seventy feet wide.

These three shallow blocks condemned and out of the way would, by uniting Eleventh and Twelfth streets, make a street 130 feet wide. This topographical condition has created an impediment in the way of travel to and from and across the Bottoms which the city officials have for a long time desired to remove, and to accomplish that purpose they have (we are still drawing from the statement in respondent's brief) decided on this plan, viz: The grade of Twelfth street is to be altered as above indicated, the three shallow blocks lying between Santa Fe and Liberty streets, Eleventh and Twelfth streets, are to be condemned and taken out of the way, and a viaduct is to be constructed at the city's expense, perhaps two viaducts, one to carry the heavy, the other the lighter traffic, across the Bottoms from the brow of the bluff on the east to Liberty street on the west on the grade of Twelfth street as it will be established in this proceeding.

At the trial it was shown in evidence by the city that an ordinance had been duly passed to condemn the three blocks above mentioned and proceedings were then pending to assess the damages and benefits incident to the condemning of the same, and that suit was pending in the same divisions of the circuit court as that in which this suit was being tried. And the record in this case shows that this judgment was held in the breast of the court until the other case was prosecuted to judgment, the court holding that one should not go into judgment for the city until the other also so resulted. Judgment was rendered in favor of the city in both cases, appeals taken in both, and both are now before this court and submitted together. It appears from the record in both these cases that the benefit district in one is the same as in the other. But in so far as the general plan involved the construction of the viaduct, the only evidence offered to prove it was the oral evidence of witnesses who stated that the plan

had been thoroughly discussed by the city officials and they had decided that it should be done. There had been no plans of the viaduct drawn, no details as to its width or capacity, no specifications of material, no determination as to when it should be built. The gap to be filled by the viaduct is over three thousand feet in width. The evidence showed, and it was practically admitted, that unless this gap was spanned by a viaduct neither the grading of Twelfth street as proposed nor the condemning of the three blocks on the west side would reflect the least benefit on the property included in the benefit district, nor anything but damage to the property abutting Twelfth street.

The evidence in behalf of the city as to the proposed viaduct was to the effect that the reason no ordinance was adopted providing for the construction of the viaduct was that it would be contrary to the city charter to pass such an ordinance until the money was in the city treasury to pay for the structure and there was no money then available for that purpose. In the oral argument before this court it was said that a proposition to issue bonds for this purpose had been submitted to a vote of the people and by such vote authorized, but some question as to the validity of the vote having arisen the issuance of the bonds was delayed and would await the judicial settlement of that question.

The main question is, is the city entitled to judgment in either case until there is some assurance, beyond what was shown by the oral testimony, that this viaduct, without which neither the grading of Twelfth street as proposed in this, nor the condemning of the three blocks in the other suit, would reflect any possible benefit on the property in the benefit district or be of any use to the public? So far as the grading of Twelfth street is concerned it would result in leaving the abutting property on both sides from Wash-

ington to Summit street fronting on a deep cut, thus depriving the owners of the use they formerly had of that street and leaving them dependent on such future action as the city government might see fit to take to give the necessary relief; and so far as the condemnation suit is concerned it would take the private property without any benefit to the public of the character proposed.

The learned trial judge fully appreciated the difficulty of the question, and, in colloquy between court and counsel, on objection to the introduction of evidence, stated that it devolved on the city to prove its general scheme before it could be entitled to a judgment in either case, and for that reason the court, over the objection of counsel for defendants, allowed the city to introduce in evidence in this case the ordinance on which the condemnation suit was founded and the proceedings in that case, and also oral testimony as to the design or purpose of the officials to build the viaduct. In overruling the objection to the evidence of the ordinance and proceedings in the other suit the court said: "I cannot see any way to try this case except for the court to retain control of it and of the other case, but withhold a judgment in both cases until both are ready for judgment. And then let the court determine at that time whether the judgments, taken together, are reasonable or not, and protect the property-owner in that way by a final judgment, having both in view and having the question of the reasonableness of both verdicts in view at the same time." Again the court said: "I don't see how any witness can come on the stand here and give an intelligent opinion as to the benefit or damage to this property unless he has the entire plan in his mind." And the counsel for the city said: "I don't understand the city will insist on pressing the case and insist on the grade being made unless the whole scheme goes through." And when counsel for defendants,

cross-examining a witness on the question of benefits, asked what benefit it would be to the property in the district if the gap was left from the brow of the bluff to a point over or across the Bottoms, the court said: "I don't think you need take up time on that, Mr. Ingraham, because I have said that if this case shows that that condition is going to be there and the information does not come to the court in some proper way that this plan is going to be carried out, I am going to dismiss this case as unreasonable." Thus we see that the learned trial judge had a just appreciation of the merits of the case and a correct idea of the law, but on the point of obtaining information "in some proper way that this plan is going to be carried out" he admitted incompetent testimony in respect of the design to construct the viaduct, and in admitting that evidence he was probably misled by some of the language used in the opinion in the case of Kansas City v. Hyde, 196 Mo. 498. In that case it appeared that the extension of the street as proposed in the ordinance would, if there was nothing more in the design, create a *cul de sac,* which would result in no public use or benefit, and that was one of the objections urged against the condemnation, but to meet that objection it was shown in evidence that there was another ordinance under which there was a proceeding pending in the same court to extend another street to meet the proposed extension and obviate that physical defect; it was held that the city had a right to introduce the ordinance and the court proceedings in the other case to show the design of the ordinance and proceedings in that case, as each depended on the other, and the purpose of either could be seen only when both were considered together. The court in that case said: "If the opening or extending of a particular proposed street is but a part of a general scheme, the court should know what the scheme is in order to appreciate the value of the particular street

in question. That scheme may be shown by contemporaneous ordinances if it has been put into that form, or it may be shown by the best evidence of which the fact is susceptible, if it has not been made a matter of record." The court would have said all that it was necessary to say in the deciding of that case if it had omitted the last clause of the last sentence. The court had before it a case in which the proof offered was an ordinance contemporaneous with the ordinance on which that proceeding was founded, and it would have been quite sufficient if it had said that that contemporaneous ordinance was competent evidence; as to what might be competent evidence in some other case, where there might be no ordinance, was not in question in that case. The purpose of the last clause in the sentence was to prevent what preceded it from being interpreted into a decision that nothing but an ordinance or court record could be received in any case that might arise. It is impossible to lay down a hard-and-fast rule that will justly apply to the many varying conditions that may surround a case that might possibly arise, but it is safe to say that in a case where an ordinance is required, an ordinance ought to be shown.

The evidence introduced by the city in the case at bar to show the purpose to build the viaduct was incompetent. It did not tend to prove that the city had taken any official action in the matter, or that there was any reasonable certainty of the accomplishment of the design; on the contrary it was shown that the city was in no condition to take action, that it had no money available for that purpose and was for that reason forbidden by its charter to pass an ordinance undertaking the work; not even the character of the viaduct, which was talked of and desired, was decided, and whether there would be one or two was left for future determination. The whole scheme was vague, there was no reasonable certainty about it.

What the city was unable to do, what it was in fact forbidden in the then condition of its treasury to do, it had no right to assume would be done and make the assumed fact the basis of its exercise of the high prerogative of eminent domain to the deprivation of the citizen of his property rights.

Decisions by the courts of other States are not always persuasive in a case like this, because the differences in the statute laws of the various States necessitate differences in judicial decisions. We have examined the cases cited by the learned counsel for the city, but as we construe them they do not sustain respondent's contention. In the Ohio case it was held that in assessing the benefits for the street opening the fact of another proposed street might be taken into account. [Chamberlain v. Cleveland, 34 Ohio St. 551.] But in that case it seems that land had already been appropriated for the other street, although the city had not taken possession of it. In Dickson v. Racine, 65 Wis. 306, which was a street opening case, the court held that it was not error to admit testimony tending to show that the property assessed for the benefit would be benefited by the building of a bridge, the building of which would be rendered practicable by the opening of the street. The court said: "The reason for opening the street was to make an approach to a bridge, the construction of which was contemplated by the city in the near future." It does not appear in the opinion of the court what action the city had taken in reference to the bridge and there was no question raised as to its being constructed in the near future, the only objection was that it was not an accomplished fact. In Orth v. Milwaukee, 92 Wis. 230, it was not suggested that the city had not taken all necessary steps towards the construction of the viaduct, it was treated as an assumed fact and in fact the viaduct was completed before the trial in the circuit court, though it had not been completed when the suit was begun.

In neither of those suits was there any question raised as to the city's right to condemn for the purpose shown, but there was only a question as to the amount of damages or benefits. We have been referred to no case where a condemnation suit has been sustained which was based on a contemplated public improvement that had progressed no farther than to have been talked about with approval.

We hold that, without a viaduct spanning West Bottoms from the bluff on the east to Liberty street on the west, neither the proposed grading of Twelfth street nor the condemnation of the three blocks between Santa Fe and Liberty streets, Twelfth and Eleventh streets, could result in anything but damage or deprivation of private property without any public benefit and that there is no legal showing that such viaduct will be constructed in the near future or reasonable time, therefore there is no foundation in law for the proceeding relating to the grading of Twelfth street or that relating to the condemnation of the three blocks mentioned.

There are other assignments of error, but as what is above said is decisive of the case there is no use discussing the other questions.

The judgment is reversed and the cause is remanded to the circuit court with directions to dismiss the suit.

*Fox, C. J., Gantt, Lamm* and *Graves, JJ.,* concur; *Woodson, J.,* concurs in all except what is said concerning the case of Kansas City v. Hyde, 196 Mo. 498, as to which he dissents; *Burgess, J.,* not sitting.