This action in damages for the death of plaintiff's husband, alleged to have been due to the negligence of defendants, was instituted in the circuit court of Schuyler county, Missouri, on February 26, 1930, against the Chicago, Burlington Quincy Railroad Company and the Penrod, Jurden Clark Company.
The facts of record are that the defendant railroad company owns and operates a line of railroad running east and west through the town of Downing in Schuyler county, Missouri, and that its trackage consists of a main line, and to the north of that, a side track; defendant Penrod, Jurden Clark Company was engaged in the shipment of logs from the said town of Downing. Louis L. Wertz, deceased husband of plaintiff, was seventy-eight years of age, possessed of all his faculties, and engaged in the jewelry business at Downing, having his business in the drug store of his brother-in-law, James Taylor. The town of Downing is divided into two sections by the railroad tracks, the business part being north thereof and the residence section chiefly on the south side, thus making it necessary for persons living on the south side to cross the tracks in going to and from the business section. The railroad company owns the land upon which the tracks and station are maintained. It appears the switch track is north of and parallel to the main line track; west of the station a street known as Fifteenth street crosses the said tracks at right angles. On the east side of this street is maintained a cement sidewalk, running north and south, which the evidence shows was in a good state of repair at the time of the injury in suit.
On December 10, 1929, the Penrod, Jurden Clark Company was engaged in loading logs on flat cars. These cars were placed, or spotted, on the switch track and east of Fifteenth street, which is sixty feet in width. The apparatus for loading the logs consisted of an upright gin pole set up by the side of the car and held in place by a guy wire or cable. There was a pulley attachment and *Page 1058 
a block and tackle at the side of the gin pole, used in the process of lifting the logs. A cable connected with this apparatus ran across the sidewalk just mentioned to the west side of Fifteenth street and attached to an automobile truck. The cable would be lowered and attached to the log by means of a grab hook, and the truck moving backward would raise the log to a proper height to be loaded on the car, the cable operating across the sidewalk. The testimony shows decedent had lived in Downing about five years and that his yearly income from his business amounted approximately to $1500. His family consisted of his wife (plaintiff herein) and a daughter, Luella, about sixteen years of age. The family lived south of the railroad right of way and decedent used the sidewalk in question daily in going to and from his place of business.
On December 10, 1929, decedent started to his home from his store, at about 12 o'clock noon, traveling along the sidewalk in question, going south, looking "sideways" at the man on the car and observing the operation of loading the logs. When he reached a point about six feet north of the north rail of the switch track, at the point where the cable crossed the sidewalk, he fell, landing on his hands and knees and tilting over on his nose. The evidence discloses that when the cable was attached to a log and the truck pulling thereat the tension raised the cable from eight to twelve inches above the surface of the sidewalk. There was mud on the cable and on the walk at the point where decedent fell. He fell on the north side of the cable and some packages he had been carrying were found on the south side thereof. The direct testimony is not clear as to whether the truck was standing still at the time decedent fell or whether the cable was taut at the time. One witness testified:
"I stood there and was watching them load logs. I never noticed anything across the sidewalk. I saw him fall. At the time I did not notice anything he fell over. The first I noticed he fell on his face and head and was trying to get up."
Another that decedent —
"passed me and started across the crossing and the truck was back north and the cable across the sidewalk, and he caught his toe and fell down. He went on his hands and knees and then tilted over on his nose.
"Q. What was he doing? A. He was looking sideways, looking at the man on the car."
Another witness testified that he saw the cable across the sidewalk after decedent fell and that he did not think that there was anything else across it.
O.H. Sears, in charge of loading the logs for Penrod, Jurden 
Clark Company, was operating the truck and seated therein when the accident occurred, saw decedent fall and immediately ran to him, assisted him to his feet, brushed the mud and dirt from his *Page 1059 
clothing and went with him to Mr. Taylor's drug store. Sears testified that he "had view of the entire sidewalk on the east side" of the street. He further testified:
"Q. You saw Mr. Wertz when he was thirty or forty feet north of the cable? A. I saw men coming all the time. I didn't know Mr. Wertz.
"Q. You saw a man coming and then you saw him fall. Do you recall it was the man that was coming? A. I couldn't say. There were usually men standing around there watching us load logs."
A Dr. Gerwig was called and Sears went with decedent to the doctor's office, stayed there throughout the afternoon and assisted in taking the injured man to his home about six o'clock P.M. of that day. He then left for a short time but returned and remained until Mr. Wertz died, about 8:30 P.M. the same day. It is in evidence that Mr. Wertz's daughter, Luella, and Mr. Sears were the first to reach him after the accident, at which time decedent was bleeding profusely at the nose and mouth and had a handkerchief over his face; Mr. Sears testified he looked broken down and that his hands were swollen. The testimony shows Dr. Gerwig cleaned him up and packed his nose with gauze, using adrenalin in an attempt to stop the hemorrhage. About an hour thereafter, the doctor gave him a serum and another about twenty to twenty-five minutes later. He also administered morphine and strophine, hypodermically, and then the two shots of serum above mentioned and, later, another hypodermic. Decedent was conscious when taken to his home and until, perhaps, forty-five minutes after the last shot of serum. It is in evidence that Dr. Gerwig treated decedent about two years previously for hemorrhage of the nose, but the bleeding at that time was checked without much difficulty.
The amended petition, upon which the cause was tried, alleges the necessary formal matters and charges negligence, as follows:
"That on the said 10th day of December, 1929, the defendant Penrod, Jurden Clark Company was engaged at said place in loading said logs in the aforesaid manner, and then and there negligently, carelessly and wrongfully caused the aforesaid cable to be drawn across the aforesaid sidewalk, obstructing the free and safe use of the same as a sidewalk, and making the same dangerous for use by the public. That defendant Chicago, Burlington Quincy Railroad Company permitted its codefendant to place its said logs for loading at the aforesaid place, and permitted it to loan the said logs at said place when said defendant Chicago, Burlington Quincy Railroad Company knew that its codefendant in so loading said logs at said place would obstruct the said sidewalk in the manner hereinbefore stated. That on the said 10th day of December, 1929, the defendant Chicago, Burlington Quincy Railroad Company knew that the said cable was drawn across the aforesaid sidewalk for use of the *Page 1060 
public and caused it to be dangerous and unsafe for use of the public and pedestrians who might be passing over said sidewalk, but negligently and carelessly permitted its codefendant to so obstruct the same and make it dangerous and unsafe for travel. . . . and while the defendant Penrod, Jurden Clark Company was so engaged in loading said logs and while it had the aforesaid cable so drawn across said sidewalk, and while defendant Chicago, Burlington Quincy Railroad Company so knew of the acts of its codefendant, plaintiff's husband, the said Louis L. Wertz, was walking along and over said walk and that by reason of its said unsafe condition and by reason of said cable being so stretched across the same he was tripped and thrown violently upon said walk, receiving certain severe wounds and injuries from which he, on said date, died.
"That defendant knew, or by the exercise of ordinary care, could and should have known that plaintiff's said husband was passing along and over said sidewalk at the time of the aforesaid accident and that he was oblivious to danger of passing over said sidewalk when the same was so obstructed and could and should have warned him of the danger in time to have averted the accident and could and should have ceased the operation of loading in time to have permitted him to pass along said sidewalk in safety, but negligently and carelessly and in disregard of their duties failed to warn plaintiff's said husband when he was approaching the point where the said sidewalk was obstructed of the danger into which he was walking and negligently and carelessly failed to cease operating the said loading apparatus when the plaintiff's said husband approached the point where the said cable obstructed the sidewalk upon which he was walking. That both of the defendants knew, or by the exercise of ordinary care could have known that plaintiff's said husband was unaware of the danger in which he then was."
Judgment was sought in the sum of $10,000. The defendants filed separate answers, each consisting of a general denial and, as affirmative defense, a plea of contributory negligence. The reply was a general denial.
At the close of all the evidence, defendants each asked an instruction in the nature of a demurrer. The court gave such instruction in behalf of the Railroad Company, but refused the one offered by the other defendant. The cause was tried to a jury and resulted in a verdict and judgment against Penrod, Jurden 
Clark Company, in the sum of $5,000. Motions for a new trial and in arrest of judgment were overruled and defendant Penrod, Jurden Clark Company has appealed.
The first point presented for our consideration is plaintiff's motion to affirm the judgment, because (1) the abstract of the record fails to recite that a record entry was made of the filing of the amended petition in the circuit court of Schuyler county, Missouri; and (2) *Page 1061 
because the abstract of the record fails to recite that a record entry was made of the filing of the separate answer of defendant Penrod, Jurden Clark Company in the circuit court of Schuyler County. But in view of the disposition of the appeal, hereinafter, we need not discuss nor pass upon this motion.
Addressing ourselves to the merits of the appeal, it is noted there are fifteen assignments of error which are discussed under five headings in points and authorities, the first being that the court erred in giving plaintiff's Instruction No. 1. The error charged against this instruction is that it submitted the case to the jury on the humanitarian, or "last chance" doctrine, when neither the petition nor the evidence justified the same; that the petition does not plead imminent peril at the time of the injury, within the meaning of the humanitarian rule. We think, from the part of the petition above quoted, it may properly be held the petition charges obliviousness to peril when decedent was approaching and walking into the danger point; that it also charges failure to warn and failure to cease operation of the dangerous instrumentality. [Frankel v. Hudson, 271 Mo. 495, 196 S.W. 1121; Stottle v. Ry., 18 S.W. (Mo.) 2d 433; Sec. 1100, R.S. 1929; Ford v. Railway, 318 Mo. 723, 300 S.W. 769.] No attack was made on the petition on the ground of failure to allege a cause of action under the humanitarian theory, and the cause was tried and submitted under that theory. It will be reviewed here upon the theory on which it was tried. [Powers v. Elliott, 296 S.W. (Mo. App.) 828; Feil v. Wells, 282 S.W. (Mo.) 25; Snyder v. Elec. Mfg. Co., 284 Mo. 285, 223 S.W. 911; Snyder v. Foundry Co., 14 S.W.2d (Mo.) 603.] The evidence was of such a character as might well authorize the jury to find decedent was approaching, or was in a position of imminent peril and oblivious thereof, and that defendant's agents and servants were aware of that fact and failed to sound a warning. We rule this point against appellant.
A charge of error is also directed against the action of the court in refusing defendant's Instructions 1A and 1B, in the nature of demurrers at the close of plaintiff's case. It is urged these instructions should have been given because the only allegation in the petition as to the cause of the injury was that decedent "was tripped and thrown violently upon said walk by reason of said cable stretched across the same . . .;" that there is no evidence decedent in any manner came in contact with the cable or that it caused him to fall; that there is a total failure of proof on this issue, and the proof was positive that decedent's own negligence contributed to his fall, whatever may have caused it; and no evidence of any negligence on the part of defendant causing or contributing to the cause of the injury.
Without passing upon the weight of the evidence, it is proper to state we have carefully read the evidence in the case and find it *Page 1062 
such that the jury could well conclude decedent tripped on the cable. In the first place, the evidence shows there was no other obstruction on the sidewalk at the point of the accident than the cable which defendant was operating. There is no positive evidence of record to the effect the cable was taut when decedent fell. Neither is there any evidence to the contrary. However, there is some testimony from which the jury might well conclude that the cable was taut, and that decedent tripped over it. There is the evidence that decedent fell on the north side of the cable and packages he was carrying were found on the south side thereof, after his fall. Also there was the testimony of the undertaker, E.L. Moore, who prepared the body for burial, to the effect that between the right ankle and knee there was a six inch abrasion; that "his right knee and hip were bruised; had the appearance of something having scraped across it." The hands and nose were swollen. Defendant presented no other plausible theory for the injury. In this situation we may not convict the trial court of error in refusing the instructions in the nature of demurrers at the close of plaintiff's case. The testimony above referred to was quite sufficient to take the case to the jury.
The answer pleaded contributory negligence. Moreover, the cause was tried and submitted under the humanitarian rule and under that theory decedent's negligence, if any, has no bearing on the issues.
It is charged the court erred in refusing defendant's Instructions 1 to 7 inclusive, because they correctly declare the law, and failing to sustain the demurrer, the court should have given said instructions. These instructions submit the question of decedent's contributory negligence, but as stated, contributory negligence has no place in a cause under the humanitarian rule. It follows there was no error in the refusal of said instructions. Instruction numbered 3, which is included in the above designated group, sought to instruct the jury that "there is no evidence in this case proving, or tending to prove the cable was raised at the time and place in question, and you must not, in arriving at your verdict, consider that there was any such evidence." From what we have already said it is apparent there was evidence tending to prove the cable was raised at the time, and the giving of said instruction would have been error. We rule this point against defendant.
It is urged, under assignments of error 6 to 10 inclusive, the court erred in withholding from the jury the instruction in the nature of a demurrer in behalf of appellant's codefendant and sending the jury out to consider the case without instructing them that one defendant had been discharged; that such action was highly prejudicial to the remaining defendant and constitutes reversible error. Appellant, in its brief, states this is a question of first impression in this State. This position cannot be sustained for several reasons. First, *Page 1063 
as shown by the record, no request was made by either party that the instruction in the nature of a demurrer be read to the jury, and no exception is shown to the failure of the court in this respect. Being a matter of exception and none having been made, appellant may not now be allowed to complain. Furthermore, the matter is not of first impression in this State. A similar situation arose in the case of Berry v. Railroad, 214 Mo. 593, 598, 114 S.W. 27, and Judge LAMM, who wrote the opinion, said:
"Moreover, at the very worst on the record before us the matter complained of does not a particle affect the rights of the appellant on the merits of the case. If it is liable at all it is liable for the whole harm done the child. Therefore, the presence or absence of its codefendant as a party to the judgment or to the suit cuts no figure on the merits;
 . . . . . .
"The matter complained of is no concern of appellant, it causes its liability to neither shrink nor swell, wax nor wane. It impairs appellant's defenses not a whit. It is ordained by statute that only harmful error will work a reversal. Before we can reverse a judgment, we must `believe that error was committed by such court against the appellant or plaintiff in error, and materially affecting the merits of the action.'"
We think we need not pursue this point further, and it is ruled against defendant.
Finally, it is urged under assignment of error numbered 13, that the verdict is excessive. However, as defendant fails to brief this point, we must consider it abandoned. [Denkman v. Fixture Co., 289 S.W. 591; Moffett Bros. Andrews Com. Co. v. Kent, 5 S.W.2d 395.] The judgment is affirmed. Bland J.,
concurs; Trimble, P.J., absent.