[1] This is a condemnation suit brought by the appellant, City of St. Louis, to condemn for use as a public street a strip of land 50 feet wide located in City Block 2215.
[2] City Block 2215 is bounded on the north by Market Street, on the west by Theresa Avenue, on the east by Rankin Avenue, and on the south by the right-of-way of the Wabash Railroad, located in the Mill Creek Valley. The proposed street is now a private street known as Edwin Street, and runs from Market Street to the railroad right-of-way. Along both sides of this street are business concerns. Two industrial tracks of the Wabash Railroad parallel the street on the east and west to serve the rear doors of these business houses.
[3] Parallel with Edwin Street, and distant 261 feet westward therefrom, Theresa Avenue carries traffic at grade across the tracks of the railway companies located in the Mill Creek Valley. There is no road, street or viaduct to carry traffic across these railroad tracks at the point where Edwin Street ends at the Wabash right-of-way.
[4] The defendant Trinidad Asphalt Manufacturing Company owns land on both *Page 832 
sides of Edwin Street. Its property east of Edwin Street extends to the Wabash right-of-way, and that on the west extends to a point 21 feet 7 1/8 inches northward of the said right-of-way. The other defendants (listed in the title page of this opinion) own the land along Edwin Street between respondent's property and Market Street.
[5] On February 25, 1946, the Board of Aldermen of the City of St. Louis passed an ordinance establishing Edwin Street as a public street and directing the City Counselor to take action in condemnation for the appropriation of the property for that purpose. Following the adoption of the ordinance, this suit was instituted. The owners of land abutting Edwin Street were made party defendants.
[6] Thereafter, defendant Trinidad Asphalt Manufacturing Company filed its motion to dismiss, on the ground that:
[7] "Plaintiff's petition fails to state a claim on which relief can be granted in that said petition, together with the plat attached thereto and made a part thereof, shows on its face that the property of this defendant sought to be condemned by the plaintiff for public use, namely, a street, is in fact for a private use; said street so far as the portion thereof extends into, across and bisects this defendant's property being a blind street or cul de sac terminating on the south at the railroad right-of-way and leading nowhere and serving no member of the public and, hence, is of no public use whatsoever and is merely a private use by reason of which the attempted condemnation is for a private use as distinguished from a public use and is illegal and null and void under the applicable provisions of the Constitutions of the United States, State of Missouri and the Charter of the City of St. Louis.
[8] "Wherefore, this defendant prays that the above action be dismissed as to it and for such other and further relief as the Court may deem proper in the premises."
[9] At the hearing on the above motion the evidence adduced by the defendant showed that the portion of the private street within the confines of the property of defendant Trinidad Asphalt Manufacturing Company had not been in use since 1935; that the same was covered with rubbish, and abandoned; that the southern most end of Edwin Street terminated at the Wabash right-of-way; that there was no access across the tracks; and that there were no loading places at the Wabash right-of-way where people could pick up freight.
[10] On the foregoing evidence, the trial court sustained the motion to dismiss and dismissed the action as to defendant Trinidad Asphalt Manufacturing Company. Plaintiff thereafter appealed to the Supreme Court, but that court held it did not have jurisdiction of the appeal and transferred said cause to this court. City of St. Louis v. Butler Company, Mo.Sup.,219 S.W.2d 372.
[11] The main question presented on this appeal is whether the proposed taking of respondent's land is for a public use within the meaning of Section 1 of Article XXI of the Charter of the City of St. Louis. This is a judicial question, regardless of any legislative declaration that the proposed use is public. Missouri Constitution, Article 1, Section 28, Mo.R.S.A. Where the taking of property, though ostensibly for a public improvement, serves no public purpose, there is no taking for public use. Kansas City v. Hyde, 196 Mo. 498, 96 S.W. 201, 7 L.R.A., N.S., 639, 113 Am.St. Rep. 766; Kansas City v. St. Louis S. F. R. Co., 230 Mo. 369, 130 S.W. 273, 28 L.R.A., N.S., 669; State ex rel. State Highway Commission v. Curtis, Mo.Sup., 222 S.W.2d 64.
[12] In the Hyde case, supra, it appears that defendant Hyde owned a tract of land bounded on the east by Oak Street, on the west by an alley, and on the south by the right-of-way of the Kansas City Belt Railway. Twenty-first street, 60 feet wide, west of Hyde's land, terminated at the west line of defendant's property, its south line being nearly coincident with the south line of defendant's property. Twenty-first Street continued east of defendant's property for a considerable distance north of the line of Twenty-first Street, west of defendant's land. The city passed an ordinance *Page 833 
extending Twenty-first Street eastwardly into defendant's land, but it did not propose to unite the two disconnected ends of said street, nor carry the street through defendant's land, but to terminate the street at a point ten feet west of defendant's east line. On this state of facts, it was contended that there was no public use, to which the court agreed. The defendant's contention and the court's view are set out in the opinion, as follows: "Appellant contends that it appears on the face of the ordinance, when applied to the physical facts, above stated, that the public has no interest in this proceeding; that the extension of Twenty-First street as proposed would simply create a cul-de-sac in defendant's property which would be of use to no one, and that we think is correct." 196 Mo. 498, loc. cit. 504, 96 S.W. 201, loc. cit. 202, 7 L.R.A., N.S., 639, 113 Am. St.Rep. 766.
[13] The court thereafter held that the trial court erred in excluding evidence of another suit pending, the purpose of which suit was to extend Oak Street southwardly to connect with the proposed Twenty-first Street extension, which evidence would show that the latter extension was for a public use and would serve the public. The court also held that the trial court erred in excluding evidence offered by Hyde that the real purpose of the council in passing the two ordinances was not for the use of the public, but to make a way for switch tracks of the Kansas City Belt Railway.
[14] In Kansas City v. St. Louis-San Francisco R. Co., supra, the facts were as follows:
[15] In Kansas City there was a tract of land extending north and south known as the West Bottoms. Located therein were railroad tracks, freight houses, a union station, and business houses. On the east side of the Bottoms was a steep bluff, and Twelfth Street, east of the Bottoms, ended at this bluff, except that a viaduct constructed by the Street Railway Company afforded passage for street cars from that point across the Bottoms. This viaduct was not available or suitable for any other kind of traffic. From the brow of the bluff eastward, the grade of Twelfth Street rises for several blocks, then falls to Broadway, and this suit was brought to assess damages and benefits incident to a change of this grade. The evidence showed that an abrupt bluff eight feet high would remain after the change of grade. On the west side of the Bottoms it was proposed to widen Twelfth Street, and an ordinance had been enacted for that purpose and a suit filed to assess the damages and benefits incident to the condemnation. There was evidence given of a general plan to widen Twelfth Street west of the Bottoms and connect it with Twelfth Street east of the Bottoms by a viaduct. The only evidence to prove this general plan was the testimony of a witness who stated that the plan had been thoroughly discussed by the city officials and they had decided it should be done. There had been no plans of the proposed viaduct drawn, nor were there determined such details as to its width or capacity. There were no specifications of materials or any determination as to when it should be built. The gap to be spanned by the viaduct was over three thousand feet in width, and it was practically admitted that unless this gap was spanned by a viaduct, neither the grading of Twelfth Street east of the Bottoms, nor the widening of it on the west side, would confer any benefit on the property included in the benefit district. No ordinance was adopted for the construction of the viaduct in question for the reason that it was contrary to the city charter to pass such an ordinance until the money was in the city treasury to pay for the structure, and there was no money available for that purpose. The court held that the city was not entitled to a judgment under the facts developed. The court said: "The main question is: Is the city entitled to judgment in either case until there is some assurance, beyond what was shown by the oral testimony, that this viaduct, without which neither the grading of Twelfth street as proposed in this, nor the condemning of the three blocks in the other suit, would reflect any possible benefit on the property in the benefit district or be of any use to the public? So far as the grading of *Page 834 
Twelfth street is concerned, it would result in leaving the abutting property on both sides from Washington to Summit street fronting on a deep cut, thus depriving the owners of the use they formerly had of that street, and leaving them dependent on such future action as the city government might see fit to take to give the necessary relief; and so far as the condemnation suit is concerned it would take the private property without any benefit to the public of the character proposed." Kansas City v. St. Louis San Francisco R. R. Co. et al., 230 Mo. 369, loc. cit. 373, 374, 130 S.W. 273, loc. cit. 274, 28 L.R.A., N.S., 669.
[16] The court held that the trial court erred in admitting the oral testimony with respect to the general design to construct the viaduct. The court said:
[17] "It did not tend to prove that the city had taken any official action in the matter, or that there was any reasonable certainty of the accomplishment of the design. On the contrary, it was shown that the city was in no condition to take action, that it had no money available for that purpose, and was for that reason forbidden by its charter to pass an ordinance undertaking the work. Not even the character of the viaduct, which was talked of and desired, was decided, and whether there would be one or two was left for future determination. The whole scheme was vague. There was no reasonable certainty about it.
[18] "What the city was unable to do, what it was in fact forbidden in the then condition of its treasury to do, it had no right to assume would be done, and make the assumed fact the basis of its exercise of the high prerogative of eminent domain, to the deprivation of the citizen of his property rights.
* * * * * *
[19] "We hold that, without a viaduct spanning West Bottoms from the bluff on the east to Liberty street on the west, neither the proposed grading of Twelfth street nor the condemnation of the three blocks between Santa Fe and Liberty streets, and Twelfth and Eleventh streets, could result in anything but damage or deprivation of private property without any public benefit, and that there is no legal showing that such viaduct will be constructed in the near future or reasonable time. Therefore there is no foundation in law for the proceeding relating to the grading of Twelfth street or that relating to the condemnation of the three blocks mentioned." Kansas City v. St. Louis San Francisco R. R. Co., 230 Mo. loc. cit. 376, 377, 378, 130 S.W. 273, loc. cit. 275, 28 L.R.A., N.S., 669.
[20] It seems to us that the principle of law announced in the above case is decisive of the case at bar. It is clear from the evidence that no public convenience would be served by extending Edwin Street through the respondent's land. A different situation would be presented if there were evidence of a plan to carry Edwin Street across the railway tracks, or evidence of the existence of depots or loading docks at the end of the street which would be available to the general public. But there was no such evidence. Since neither the public generally nor the owners of property abutting on Edwin Street would obtain any benefit from the proposed extension, there was no public use shown. The trial court properly sustained respondent's motion to dismiss.
[21] At the hearing on its motion to dismiss the petition the respondent introduced in evidence the original indenture which reserved the easement for the private street in question, a deed of trust containing a plat of said easement, and the warranty deed by which respondent acquired title to its property, which showed that it was subject to the easement. Plaintiff objected to this evidence on the ground that it was irrelevant and immaterial. Appellant urges these objections here as grounds for reversal. There is no merit to the contention. The evidence was competent on the sole issue in the case, namely, whether the proposed street was for a public use. Appellant assigns as error the admission of other evidence, but does not carry forward these assignments in its brief, hence they are abandoned. Wertz v. Chicago, B. Q. Ry. Co., 225 Mo.App. 1056, 40 S.W.2d 515; Denkman v. Prudential Fixture Co., Mo.Sup., 289 S.W. 591; *Page 835 
Moffett Bros., etc., v. Kent, Mo.Sup., 5 S.W.2d 395; Hanser v. Lerner et al., Mo.App., 153 S.W.2d 806; Rafferty v. Levy et al., Mo.App., 153 S.W.2d 765.
[22] We find no error in the record. The judgment is affirmed.
[23] HUGHES and McCULLEN, JJ., concur.