**STATE of Missouri, ex rel. MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Relator,**

v.

**The Honorable Timothy W. PERIGO, Judge of the Circuit Court of Newton County, Missouri, Respondent.**

No. 19502.

Missouri Court of Appeals, Southern District, Division One.

Sept. 19, 1994.

Motion for Rehearing or Transfer Denied Oct. 11, 1994.

**150**

William D. Farrar, Senior Asst. Counsel, Judy L. Curran, District Counsel, and Rich Tiemeyer, Chief Counsel, Mo. Highway & Transp. Comm., Kansas City, for relator.

Gary C. Lentz, Spencer, Scott & Dwyer, Joplin, M. Roger Carlin, Evenson, Carlin & Lepage, Pineville, for respondent.

## PROCEEDING IN MANDAMUS

SHRUM, Chief Judge.

In this mandamus proceeding, the Missouri Highway and Transportation Commission (Relator) asks that we order Circuit Judge Timothy W. Perigo (Respondent) to set aside his order dismissing Mikel R. Cope and Ann T. Cope (the Copes) and Stanley Jon Janss and Wilma Jean Janss (the Jansses) from an underlying condemnation suit.

In ordering dismissal, Respondent found that the taking of the Copes' and the Jansses' property served no public purpose, and consequently, the trial court lacked jurisdiction. No appeal was taken by Relator; instead, it filed a petition in mandamus with this court.

A threshold issue is whether mandamus is available to Relator. We hold that it is.

Based upon the undisputed facts presented, we find as a matter of law that Respondent incorrectly concluded he lacked jurisdiction. Our preliminary order in mandamus is made absolute.

## FACTS

On February 9, 1994, Relator filed a condemnation petition seeking to acquire land on which to build and maintain newly relocated U.S. Route 71 in Newton County, Missouri. Defendants Cope and Janss separately moved for dismissal of Relator's petition as to them, claiming that a part of the land being taken from their respective real estate parcels would be devoted to private and not public use; therefore, the trial court lacked jurisdiction to order condemnation. After an evidentiary hearing on Relator's condemnation petition, Respondent sustained the Copes' and Jansses' motions to dismiss. In part, Respondent's order reads:

"Court reviews *City of St. Louis vs. Butler* 223 SW2d 831 (MO App 1949). Court finds no public convenience would be served by the condemnation. Court finds that the taking of the Copes' and Janss' property, though ostensibly for a public improvement, serves no public purpose and there is no taking for public use. Accordingly, this Court lacks jurisdiction to order [the Copes'] and [the Jansses'] properties condemned."

Galen Browning owned land adjacent to and north of the Jansses' property. Before filing the condemnation suit, Relator negotiated successfully with and acquired from Browning that part of his land deemed necessary by Relator for the Highway 71 project. Browning's remaining real estate was "landlocked," that is, it was left without public or private access to a public road. As part of its negotiated settlement with Browning, Relator agreed to include in its plans an "outer road," located on an expanded right of way, to connect Browning's otherwise landlocked property to Highway 86.[1] To provide the additional land needed for the outer road, Relator increased what it sought to take from the Jansses' tract.

A like situation existed regarding the Cope tract. Larry Albright owned land at the southeast corner of relocated 71 highway and county road 322. The new highway split Albright's property and left part of his land without access to a public road. Accordingly,

---

1. The outer road to the Browning tract intersected Route 86 approximately 880 feet west of the intersection of Highway 86 and relocated Route 71.

Relator increased the proposed right of way acquisition from the Copes to include a public "outer road" that would connect Albright's isolated property to a county road.

Relator did not attempt to appeal from Respondent's order dismissing the Copes and the Jansses. Instead it brought this original action in mandamus. Counsel for the Copes and Jansses filed an answer on behalf of Respondent and a motion to quash our preliminary order or to dismiss Relator's petition for mandamus alleging this court lacks jurisdiction.

## DISCUSSION AND DECISION

*Is Mandamus Available?*

In a brief filed on his behalf, Respondent urges that we quash our preliminary order and dismiss Relator's petition for mandamus. Respondent's argument, in effect, is that an appeal lay from the order dismissing Relator's condemnation petition against the Copes and the Jansses, Rule 74.01 and § 512.020, RSMo 1986, and that Relator should have brought an appeal under Rule 81 rather than seeking our order in mandamus. We need not decide whether the trial court order was appealable, for we have concluded an appeal would not have provided Relator an adequate remedy.

■ "The function of a writ of mandamus is to enforce, not establish, a claim or right and its purpose is to execute, not adjudicate." *Naugher v. Mallory*, 631 S.W.2d 370, 374[3] (Mo.App.1982). It is not a writ of right. *Id.* at 374[5]. Courts issue a writ of mandamus only in the exercise of judicial discretion. *Norval v. Whitsell*, 605 S.W.2d 789, 791 (Mo. banc 1980). In exercising that discretion, Missouri courts often favorably entertain mandamus "in matters involving extraordinary emergencies or of considerable public importance, and of more than local concern."

**2.** "The law is well-settled in Missouri that 'an order adjudging that the petitioner has the right to condemn is interlocutory only and not subject to appeal, and so the points of law involved in the adjudication cannot be heard by an appellate court until there has been a final judgment of condemnation.'" *State ex rel. Clothier v. Yeaman*, 465 S.W.2d 632, 634 (Mo. banc 1971). Nevertheless, the *Clothier* court said it would

*State ex rel. Breshears v. Missouri State Employees' Retirement System*, 362 S.W.2d 571, 573 (Mo. banc 1962).

■ Mandamus is generally unavailable if appeal would provide an adequate remedy. *State ex rel. Fielder v. Kirkwood*, 138 S.W.2d 1009, 1010[2] (Mo. banc 1940); Rule 84.22. However, this general principle is not without exception. In *Fielder*, our supreme court stated:

"We have established the rule that when, upon a preliminary question of jurisdiction depending wholly upon the law and not upon the facts, the court misconceives its jurisdiction of the cause or of the parties and refuses to proceed to a final determination upon the merits then the appellate court will issue its writ of mandamus to compel the lower court to reinstate the matter and proceed to its final determination without attempting to dictate what the result of such determination shall be.... In such cases no question of fact being involved ... an appeal ... would not furnish an adequate remedy."

*Fielder*, 138 S.W.2d at 1011[3] (citations omitted). *See also State ex rel. City of St. Louis v. Litz*, 653 S.W.2d 703, 705[2] (Mo. App.1983); *Yeager v. Yeager*, 622 S.W.2d 339, 341[3] (Mo.App.1981).

■ The facts from which Respondent concluded that part of the land taken was for private use and, therefore, he lacked jurisdiction are undisputed. As we discuss in detail later, from the undisputed record, it is "clearly evident" [2] that the land sought from the Copes and the Jansses through condemnation, including the extra necessary to provide the questioned outer roads, was so essentially a part of the project for improving a public highway as to be for public use.

Applying the rule enunciated in *Fielder*, 138 S.W.2d at 1011[3], *Litz*, 653 S.W.2d at 705[2], and *Yeager*, 622 S.W.2d at 341[3], we

"intercede by prohibition ... where it is 'clearly evident' that an attempt is being made to take private property by condemnation for a use which is not public." *Id.* By analogy, we believe *Clothier* is authority for us to intercede by mandamus where it is "clearly evident" that Respondent misconceived, as a matter of law, that land to be taken from the Copes and the Jansses was for private, not public use.

conclude that the preliminary question of jurisdiction, i.e., whether the proposed taking was for private or public use, was wholly a question of law and that the trial court incorrectly concluded it lacked jurisdiction. Moreover, we believe an appeal, if available, would have been inadequate. As the supreme court has stated:

> "Article V., Section 4, of the State Constitution, Mo.R.S.A., gives this court superintending control over lower courts and power to issue and determine original remedial writs. Mandamus is a proper writ to compel a circuit court to exercise its rightful jurisdiction.... In effect, respondent refuses to try any of the issues in the condemnation because he has determined, in a preliminary way, that an undefined portion of the described land is not sought for a public purpose. While mandamus is a discretionary writ, we think it is proper here and that appeal would not be an adequate remedy."

*State ex rel. State Highway Commission v. Curtis,* 222 S.W.2d 64, 67[1, 2] (Mo. banc 1949) (citation omitted).

We reject Respondent's argument that mandamus is unavailable and deny the motion to quash our preliminary order or dismiss Relator's petition for a writ of mandamus.[3]

### Condemnation for Private or Public Use?

■ We start our discussion of the principal issue by noting that Article 1, § 28, Constitution of Missouri 1945, provides that "private property shall not be taken for private use with or without compensation, unless [exceptions omitted]; and that when an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be public shall be judicially determined without regard to any legislative declaration that the use is public." In considering the quoted provision, Missouri appellate courts have frequently noted the distinction between "public use" and "public necessity." *Arata,* 351 S.W.2d at 721. "[W]hether or not land is being taken for a public use is a judicial question." *Curtis,* 222 S.W.2d at 68[5]. In contrast, "the public necessity or propriety for the exercise of eminent domain is a legislative or political question and is not the same as 'public use.'" *Id.*

When considering what constitutes public use

> "'it is not necessary that the whole community or any large part of it should actually use or be benefited by a contemplated improvement. Benefit to any considerable number is sufficient. * * * Nor does the mere fact that the advantage of a public improvement also inures to a particular individual or group of individuals deprive it of its public character.' ... 'There is no more "public use" to which property can be devoted than that of a public street open alike and accessible to all members of the public.'"

*Arata,* 351 S.W.2d at 721[1, 2] (citation omitted).

Relator's authority to decide the public necessity or propriety for a public highway is found in both constitutional and statutory provisions. *See* Mo. Const. art. IV, § 29; Chapter 227, RSMo. "The power to locate a state highway, to determine its width, type of construction and *the extent of land necessary for economical ... construction are vested in the sound discretion of the State Highway Commission,* uncontrolled by the courts ex-

---

3. The claim in the motion to quash or dismiss is that we lack jurisdiction because the "private or public use" issue is res judicata, i.e., was adjudicated earlier by Respondent, and his order, being unappealed, is now final. As authority, Respondent cites *Arata v. Monsanto Chemical Company,* 351 S.W.2d 717 (Mo.1961). *Arata,* however, is not in point. There, the State Highway Commission filed a condemnation suit to take land owned by Arata, a condemnation order was entered, and exceptions to the commissioners' award were filed. Before trial of the exceptions, Arata settled with the state. Later, Arata sued Monsanto for damages, claiming that Monsanto had induced the state to condemn Arata's land for Monsanto's private benefit. Monsanto answered that the public versus private taking issue was res judicata because that was decided in Arata's litigation with the state. The supreme court agreed and sustained the dismissal of Arata's petition.

In the case before us, Relator forthwith attacked Respondent's order of dismissal through mandamus. Unlike the landowner in *Arata,* Relator has not, through an earlier case, had its "day in court on that issue."

cept to compel strict compliance with the statutes and to prevent the taking of private property for a private or non-public use." *Curtis,* 222 S.W.2d at 68 (emphasis ours). In Art. IV, § 29, of our Constitution, Relator is expressly authorized to construct "limited access" highways and § 227.120(13) vests Relator with authority to institute proceedings to condemn lands for right-of-way and "for any other purpose necessary for the proper and economical construction of the state highway system. . . ." *See Curtis,* 222 S.W.2d at 67.

Here, Relator designed newly relocated Highway 71 as a limited access highway. It had authority to do so. Art. IV, § 29. Being so designed and planned, the proposed highway left Albright's and Browning's remaining land without public access. Whether "economical construction" of this 6.348 miles of Highway 71 was more likely achieved by paying Albright and Browning additional money to leave their property landlocked or by taking more land from the Copes and the Jansses for outer roads to serve the Albright and Browning properties, is a question for Relator initially to decide. It is not a proper subject of judicial inquiry, absent fraud or bad faith or unwarranted abuse of discretion. *See State ex rel. State Highway Commission v. Eakin,* 357 S.W.2d 129, 134 (Mo.1962); *Clothier,* 465 S.W.2d 632.

Here, Respondent made no finding of fraud, bad faith, or unwarranted abuse of discretion by Relator. Instead, Respondent relied exclusively on *City of St. Louis v. Butler Co.,* 223 S.W.2d 831 (Mo.App.1949). In that case, the City of St. Louis sought to acquire a north-south strip for a public street. Before the attempted taking, the strip was a private street known as Edwin Street. Edwin Street ran south from Market Street (a public street) to its terminus at the Wabash railroad right-of-way where there were no depots or loading docks available to the general public and no road, street, or viaduct to carry traffic across the railroad. The southernmost tract involved, the parcel next to the railroad, was owned by Trinidad Asphalt Manufacturing Co. That parcel lay on both sides of Edwin Street. Trinidad's motion to dismiss it from the condemnation suit was sustained. The eastern district af-

firmed, holding that the proposed taking would serve no public purpose. 223 S.W.2d at 834. It concluded that because neither the public generally nor the owners of the property north of Trinidad's property would receive any benefit from the proposed extension of Edwin Street as a public street across Trinidad's land, no public use was shown. *Id.*

Factual differences and the record here render *Butler* inapposite as supporting authority for Respondent's order of dismissal. The proposed taking in *Butler* was not part of a larger project for improving public highways, and no public benefit was shown. Here, Relator pled that all of the lands sought to be taken, including any undefined extra taking from the Cope and Janss tracts, was "necessary for the proper and economical construction" of the entire project.

> "In [such] case *all* the land sought to be taken is presumptively necessary for the public uses mentioned in relator's petition. . . . If the Commission is arbitrarily abusing its discretion by attempting to take land which can never, under any contingency, be used for any of such public purposes, the burden is upon the objecting landowners to allege and prove such abuse."

*Curtis,* 222 S.W.2d at 69 (emphasis in original).

■ As *Curtis* teaches, we presume that all the land Relator sought to take, including any extra land from the Copes and Jansses for outer roads, was for the public uses mentioned in Relator's petition. Included is the presumption that Relator has decided that the public will be benefited through reduced costs for the overall project, i.e., less cost overall to take additional land from the Copes and the Jansses than to compensate Albright and Browning for leaving their remaining property without access. The testimony elicited from Relator's witnesses on cross-examination by the Copes and the Jansses' attorneys did not effectively present issues of Relator's abuse of discretion, fraud, or bad faith. Nor did the Copes and the Jansses present testimony from any other source that effectively rebutted the presump-

tion of public use. Respondent incorrectly concluded he lacked jurisdiction of this cause.

The preliminary order in mandamus is made absolute. Respondent is ordered to set aside the order of April 8, 1994, dismissing Ann T. Cope and Mikel R. Cope, husband and wife, and Stanley Jon Janss and Wilma Jean Janss, husband and wife, from this case and is ordered to reinstate them as parties.

FLANIGAN and MONTGOMERY, JJ., concur.