## KANSAS CITY v. HYDE, Appellant.

(No. 1.)

Division One, May 30, 1906.

1. **STREET: Condemnation: Public Use: Evidence: Other Proceedings.** Where the proposed extension of a street would, standing alone, end in a *cul de sac*, and for that reason cannot be said to be an appropriation of private property to a public use, it is proper, in order to establish that use, to show that the city has pending a like proceeding the purpose of which is to establish another street to connect with the proposed extension, where both proceedings cannot be embraced in one suit. The court can withhold final judgment in the one case until judgments are rendered in both.

2. **EVIDENCE: Generally.** Nothing that is necessary for the court to know in order to reach a correct conclusion in a given case is irrelevant or immaterial.

3. **STREETS: Public Use: Fraudulent Acts of Council.** Where an ordinance to establish, widen or extend a street has become an accomplished fact, if an attempt is made to apply it to the injury of a citizen, he may show, if he can, that its passage was obtained by fraud or other unlawful means or for an unlawful purpose.

4. ———: ———: ———: For Benefit of Railroad: Unlawful Purpose. A city council has no right to condemn private property for a street in order to give it over to a railroad to be used for switches. Nor has it any right to establish a street or a system of streets at the expense of the property-owners in the district for the use of a private individual or a number of individuals. And if the city council should undertake to use the power that has been entrusted to it for the public benefit, to serve private interests, it is an abuse of power, a violation of the trust, a wilful doing of an unlawful act, a legal fraud.

5. ———: ———: ———: Vacating Street. It is not competent for the city to create a street in the name of the public for the purpose of vacating it in the interest of whom it may concern.

6. ———: ———: Unlawful Purpose: Evidence: Benefit. The property-owner should be allowed to show the purpose to which a proposed street is to be put, if for no other reason than to show the questionable extent of his benefits, if that purpose is already a part of the general scheme. And that purpose may, also, be an important fact for the court to know when the time comes to pass on the validity of the ordinance.

7. ———: ———: Public Use. The State has delegated to city councils the power to condemn private property to a public use. "Public" in that connection means everybody; if the use is not for everybody, it is a private use. If to an individual, or to any number of individuals, is given the right to use the property in such a manner as will practically exclude the general public, it is the giving of the property to a private use, and is unlawful.

8. ———: ———: ———: Conclusiveness of Ordinance: Evidence. The courts will not take the recital in an ordinance that its purpose is to condemn private property to a public use as conclusive. They will look through any sham and see the truth, and the best evidence obtainable, whether documentary or oral understandings, will be received to show the real purpose of the ordinance.

9. ———: ———: ———: ———: Equity. The property-owner in such case is not driven to a suit in equity to reform the ordinance or assail its integrity. The purpose of the ordinance, whether it be to condemn private property to a public use, or under that guise to condemn private property for the benefit of a railroad or of an adjoining property-owner, may be shown in the condemnation proceeding, which is summary, no pleadings being prescribed either by charter or statute.

10. ———: ———: Fraud: Province of Court: Method of Procedure: Evidence. It is for the court to determine whether or not the purpose of the condemnation proceeding is to take private

property for a public or for a private use; and, where neither the charter nor ordinance prescribes formal pleadings, the question may be brought to the court's attention by motion to dismiss, and when that is done it is the duty of the court to proceed to hear the evidence in support of the motion.

Appeal from Jackson Circuit Court. — *Hon. W. B. Teasdale*, Judge.

REVERSED AND REMANDED.

*Lathrop, Morrow, Fox & Moore* for appellant.

(1) The ordinance is unreasonable and operates to deprive the appellant of his property without just compensation. McQuillin, Municipal Ordinances, sec. 550; Corrigan v. Gage, 68 Mo. 541; Halpin v. Campbell, 71 Mo. 493; Morse v. Westport, 136 Mo. 276; Armstrong v. St. Louis, 3 Mo. App. 151; Heman v. Handlan, 59 Mo. App. 490; Skinker v. Heman, 64 Mo. App. 441; Field v. Baker, etc., Co., 117 Fed. 925; Hawes v. Chicago, 158 Ill. 653, 42 N. E. 373; Allen v. Drew, 44 Vt. 174; Wistar v. Philadelphia, 80 Pa. 505; Wistar v. Philadelphia, 111 Pa. St. 604, 4 Atl. 511. (2) The purpose of the proceeding is to appropriate private property for a private use. Glaessner v. Brewing Co., 100 Mo. 508; Morse v. Westport, 136 Mo. 276; State ex rel. v. St. Louis, 161 Mo. 371; State ex rel. v. Gates, 89 S. W. 881.

*Edwin C. Meservey* and *John H. Thacher* for respondent.

(1) The second point in appellant's brief, to-wit, that this proceeding is to take private property for private use, is not a question in the record herein. No pleadings were filed herein by appellant, or any other person, alleging any proposed private use of the lands to be taken herein. Nor was this issue tendered in the case otherwise than as a question for the jury. What did the jury have to do with this question? The

only answer is, nothing. The sole province of the jury in this case was to try the question of damages and benefits herein. The use or necessity of the public for the proposed street not being proper matters for the jury to consider or determine, the circuit court properly refused to allow this question to be submitted to the jury. City of Savannah v. Hancock, 91 Mo. 54; Kansas City v. Baird, 98 Mo. 215; Cape Girardeau v. Houck, 129 Mo. 618; Kansas City v. Bacon, 157 Mo. 468. The city ordinance showing on its face that the lands taken herein are for public use, to-wit, for a public street for the common use of any and every one, is conclusive against appellant's contention that this is a proceeding to take private property for private use. Kansas City v. Baird, 98 Mo. 218; Cape Girardeau v. Houck, 129 Mo. 618; St. Louis v. Brown, 155 Mo. 545; Railroad v. Coal & Mining Co., 161 Mo. 288. (2) The first point made in appellant's brief, to-wit, that the ordinance was unreasonable and operates to deprive appellant of his property without just compensation, is not well taken. The Kansas City charter commits to the common council of the city alone the determination of the width of a proposed street and the size of the benefit district to be charged to pay therefor. Charter, 1889, art. 7, secs. 1 and 2. The court may defeat this or any other city ordinance for unreasonableness, but the court cannot defeat this proceeding because it may think the proposed street ought to be wider than the ordinance prescribes, or because the court may think that the ordinance should have prescribed a larger benefit district. Kansas City v. Morton, 117 Mo. 446. The verdict is conclusive here as to both damages and benefits because it is supported (a) by testimony; (b) by the judgment of the jury; and (c) by the approval of the circuit court. Kansas City v. Smart, 128 Mo. 296; St. Louis v. Abeln, 170 Mo. 324; Kansas City v. Railroad, 84 Mo. 410; Kansas

City v. Baird, 98 Mo. 218; Kansas City v. Bacon, 147 Mo. 279.

VALLIANT, J. — *In re* Twenty-first street. This is a proceeding under an ordinance of the city to extend Twenty-first street into certain property of the defendant Hyde, and for that purpose to assess his damages for the property to be taken or damaged, and to assess the benefits over a district prescribed by the ordinance in which district is included remaining property of defendant. The jury assessed the defendant's damages at $5,000 and his benefits at $2,577.10, and from the judgment of condemnation that followed on those assessments the defendant has appealed.

Defendant Hyde owns a tract of land nearly square in shape, containing about 60,000 square feet, bounded on the east by Oak street twenty feet wide, west by an alley eighteen feet wide, and on the south by the right of way of the Kansas City Belt railway. Twenty-first street, sixty feet wide, coming from the west, terminates on the west line of defendant's property, its south line being nearly coincident with the south line of defendant's property.

The following diagram gives a general idea of the location.

Kansas City v. Hyde.

K. C. BELT RY. CO.

Twenty-first street, as will appear from the diagram, does not extend across defendant's property, but it ends on the west against defendant's west line, and begins again going east at defendant's east line, and not then on a line with its own west end, but considerably north of it.

The ordinance in question does not aim to unite the two disconnected ends of Twenty-first street, nor to carry the street entirely through defendant's property, but to terminate it in defendant's property at a point ten feet west of his east line; nor does the ordinance aim to carry the street to its full width even as far as it purposes to go, but to the width only of thirty

feet.  Another feature of the route marked out by the ordinance is that, after going sixty-eight feet along the south line of defendant's land, it changes course to the northeast to the terminus named and that, too, at an angle which, even if the course were extended to defendant's east line, would not connect it with that end of Twenty-first street.

Appellant contends that it appears on the face of the ordinance, when applied to the physical facts above stated, that the public has no interest in this proceeding, that the extension of Twenty-first street as proposed would simply create a *cul de sac* in defendant's property which would be of use to no one, and that we think is correct.  But to meet that objection the city undertook to prove that there was another fact to be considered which would show that this extension was for a public use and would serve the public, namely, that there was pending at the same time and in the same court another proceeding the purpose of which was to widen Oak street and bring it down to connect with this extension of Twenty-first street and to the right of way of the Kansas City Belt Railway Company.  But on the objection of defendant the testimony offered by the city on that point was excluded.  The idea advanced was that this case would have to stand or fall by its own strength and could not be helped out by another proceeding, the result of which was only problematical.

We have now under consideration the appeal of this same defendant in the Oak street case, both cases having been submitted for our judgment at the same time, and in that case to meet the objection of the defendant, that the widening and extending of Oak street would only carry it to an unprofitable end, the city offered to prove that it was at the same time moving to extend Twenty-first street so as to connect it with the widened and extended Oak street, but on like objection by the defendant that evidence was excluded.  In spite

of the ruling of the court, however, the evidence in its full force got to the jury and must have had its effect, because the jury could not, with reason, have assessed any benefits in this case if there was no purpose shown to connect the two streets.

The court erred in excluding that evidence. Assuming that it was to the public interest that these two streets should be connected in the manner that they would be if both of those ordinances were carried into effect and that the common council so determined, yet, since proceedings to widen or extend both streets cannot be embraced in one suit, it would be impossible to carry the scheme into effect, if each proceeding had to rest alone on its own facts without taking into account the purpose of the other. If each proceeding depends for its success on a condition that does not already exist, but that can be brought about only by a successful prosecution of the other, and if neither can proceed until the other is finished, then the one defeats the other and both must fail. That cannot be the law. The danger suggested in the possible failure of the other proceeding can be avoided without any difficulty by the court in its control of its judgment; it can withhold its final judgment or its ruling on a motion for a new trial or otherwise suspend final action until judgments are reached in both cases.

Nothing that it is necessary for the court to know in order to reach a correct conclusion in a given case can be said to be irrelevant or immaterial.

If the opening or extending of a particular proposed street is but a part of a general scheme, the court should know what the scheme is in order to appreciate the value of the particular street in question.

That scheme may be shown by contemporaneous ordinances if it has been put into that record form, or it may be shown by the best evidence of which the fact is susceptible, if it has not been made a matter of record.

Whilst the passing of an ordinance to establish, widen, or extend a street is the exercise by the city of a delegated governmental power, legislative in its character and, therefore, not subject to judicial direction (Albright v. Fisher, 164 Mo. 56; State ex rel. v. Gates, 190 Mo. 540), yet after the ordinance has become an accomplished fact, if attempt is made to apply it to the injury of the property rights of a citizen, he may, if he can, show that its passage was obtained by fraud or other unlawful means or for an unlawful purpose. In Glasgow v. St. Louis, 107 Mo. 1. c. 203, this court, per BLACK, J., said: "The rule of law is well established that the courts will not inquire into the motives of the Legislature in enacting a law, even where fraud and corruption is alleged. [Cooley on Const. Lim. (5 Ed.), 225.] But the rule is somewhat relaxed as to municipal bodies. Speaking of such bodies it is said: 'We suppose it to be a sound proposition that their acts, whether in the form of resolutions or ordinances, may be impeached for fraud at the instance of persons injured thereby. [1 Dill. Munc. Corp. (4 Ed.), sec. 311.]'" That doctrine has been iterated by this court in other cases. [Knapp, Stout & Co. v. St. Louis, 156 Mo. 343; State ex rel. v. Gates, supra.]

At the trial of this case the defendant offered to prove that one of the men who owned the property adjoining his on the north was, at the time of the passage of these ordinances, the speaker of the lower house of the common council, to whose property a switch could not be run from the Kansas City Belt railway unless the streets were extended and widened as in these ordinances was proposed; that he, through his partner, had approached defendant with a proposition that if he (defendant), would sell him a right of way to the Belt railway, the ordinances would not be passed, but defendant declined and the ordinances were passed; that the purpose of the ordinances was not to widen or extend the streets for use as public highways, but solely

for the purpose of affording the speaker of the lower house and his business partner access by means of a switch track to the Belt railway, and that when widened and extended, as proposed in these ordinances, and turned over to the railway to be covered with switch tracks, the public would be practically excluded from the use of those streets. The court on objection of the plaintiff rejected the evidence and exception was saved. The rejection of that evidence raises the serious question in this case. If it is a fact that the purpose of the council in passing the ordinances was that these streets, when widened and extended as proposed, were to be given over to railway switch tracks, then the common council was proceeding to condemn private property for a purpose for which it had no right to condemn.

When we say that the validity of a city ordinance may be attacked on the ground of fraud in its procurement we do not necessarily mean that actual bribery or corruption must be shown, but it is sufficient if the fraud charged is of that character that has been defined to be the willful doing of an unlawful act. The common council has authority to establish, extend and widen streets for the purpose of public highways, and, when established, extended or widened, it has authority, within certain bounds, to allow railway tracks to be laid in the streets and trains to pass over them. But those streets are established for public use and the cost of establishing them is charged as a special tax on the benefit district affected. The common council has no authority to establish a street or a system of streets at the expense of the property-owners in the district for the use of a private individual or a number of individuals. And if the council should undertake to use the power that has been entrusted to it for the public benefit, to serve private interests, it is an abuse of the power, a violation of the trust, a willful doing of an unlawful act, a legal fraud.

It has been decided by this court that an ordinance of the city of St. Louis essaying to grant a railroad company the right to lay its tracks in a street that was so narrow that when the tracks were laid and trains operated on them the street was practically unsafe for a public highway, was illegal and of no effect. [Lockwood v. Railroad, 122 Mo. 86.]

As was held in the case of Glasgow v. St. Louis, above mentioned, the city has the power to vacate a street when it deems it no longer of public use and, in the absence of fraud, it is no ground for holding the vacating ordinance illegal because the effect is to give the use of the ground to an adjoining manufacturing concern, or even if it was done for that purpose. The controlling idea in that case is, that if, without fraud, the city authorities are well satisfied that the street is of no use to the public and could be advantageously used by the adjoining manufacturing concern, the ordinance vacting it is not illegal.

But in the case at bar the common council come saying we need this ground for a public highway, we are going to condemn it for the use of the public and we are going to make those who own property lying within a certain district pay for it; we are going to make this defendant, whose property to the value of $5,000 we will take, pay as for the benefit it will do him, more than half the sum we give him. Surely, if for nothing more than showing the questionable extent of his benefits, the defendant ought to be allowed to show the purpose to which the proposed streets are to be put, if that purpose is already a part of the general scheme. If along with these two ordinances the common council had passed an ordinance authorizing the Belt Railway Company to so occupy the proposed streets, when completed, with switch tracks as to give certain individuals switch connection for their property with the Belt railway, that would be a fact that would necessarily influence the jury in the assess-

ment of the benefits which the defendant would be required to pay, and it might be an important fact for the court to know when the time should come to pass on the question of the validity of the ordinance, and, if such was the purpose, the common council would have been more candid to have so avowed it; but if such was in fact the purpose, though not so avowed, it is just as important for the court to know it and the defendant has the right to prove it.

What is called Oak street is now only twenty feet wide; it terminates in that part of Twenty-first street that lies east of the defendant's property; it stands at such an angle to the Belt railway as seems to make it impracticable to run a switch track into it. The property of the firm, in whose interest alone, as the defendant contends, this proceeding is being prosecuted, lies adjoining on the north defendant's property, and is separated from Oak street by a strip ten feet wide belonging to Mrs. Crimm. The scheme as shown by the ordinance in the Oak street property is to take Mrs. Crimm's ten-feet strip and a strip of like width off the east side of defendant's property, thus making Oak street thirty feet wide and giving the firm mentioned a front for the full length of its property on that street, then the sharp angle that would otherwise hinder the laying of a track from the Belt line into Oak street is reduced by the turn of the course of the proposed extension of Twenty-first street to the northeast. If the purpose is, as defendant offered to prove that it was, to shape these streets for the convenient introduction of the switch track mentioned, the plan proposed would facilitate that purpose. Then if we contemplate what Oak street would be, thirty feet in width and a railroad track through it, the question would arise as to whether that street was any longer susceptible of being used as a public highway. In the case of Lockwood v. Railroad, above mentioned, the street was forty feet wide, from building line to building line, and

twenty-four feet from curb to curb, and this court held that the railroad tracks amounted to a practical exclusion of the public from the street and that the ordinance was therefore void.

If there was now no scheme to turn these streets over to the use of the Belt Railway Company, if they were now already extended, widened and established as proposed, and if the common council was now proposing to grant the Belt Railway Company the right to lay its tracks through Oak street, if we should adhere to what we said in the Lockwood case we would have to hold that the city council could not so drive the public off that highway. And it does not alter the case that there are other lots along the line that might be rendered more available for business purposes if they were afforded connection by switch tracks with the Belt road. The common council can no more create a street for the especial benefit of a given number of people than it can for that of one individual; if it is to be a street it must be a highway for the public, and no use of it can be granted inconsistent with the use of the general public. And whilst it is competent, as we have seen in the Glasgow case above mentioned, to vacate a street which is no longer of any use to the public, yet it is not competent to create a street in the name of the public for the purpose of vacating it in the interest of whom it may concern.

In Ligare v. Chicago, 139 Ill. 46, the city council had passed two ordinances, one to widen Archer avenue, the other granting a railroad company the right to lay its tracks in the street when it should be so widened. And the court said: "It is to our minds clear that both ordinances before us in this case are but parts of a single and entire scheme. They were adopted on the same day, and the latter expressly refers to, and is by its terms dependent upon, the adoption and enforcement of the former, and it requires that the entire cost and expense of enforcing both ordinances, and all

damages which may be adjudged against the city by reason of their being adopted and enforced, shall be paid by the railroad companies.'' In that case the city council was entirely candid in the expression of its purpose and was careful not to impose the burden of cost, expense and damage on the persons whose property was to be taken or on those owning other property in the vicinity. The court went on to say: ''Moreover, the attempt to widen Archer avenue for the limited distance and in the peculiar manner described in the first ordinance is manifestly to meet a local want in that respect, and the second ordinance expressly shows that that local want is space for laying down additional railroad tracks, and nothing else.'' Then after showing how completely the street, when widened, would be occupied by railroad tracks the court continuing said: ''Hemmed in by the wall on one side and by the buildings or inclosures on private property on the other, no rational being would, at the risk of the inevitable dangers from passing cars, use this part of the street as a common highway, unless under stress of most extraordinary circumstances. It is not material that the public are not, by the words of the ordinance, forbidden to use this part of the street— the effect of the grant is inevitably an exclusion of all but these railroads from its use, and the law deals with results and not with mere forms in such matters. . . . It is so familiar that we need not stop to demonstrate it, that cities, villages and towns are only empowered to lay out, open and improve streets for such public use as that persons and property within the municipality may be legitimately assessed or taxed for payment thereof, and that persons and property within a municipality cannot be legitimately assessed or taxed for the right of way or the making or improving of a road, for a railroad company alone. . . . . We do not deny that the city has power to widen streets, generally, and that when it has undertaken to do so the motives that may have actuated those

in authority are not the subject of judicial investigation; but the purpose for which a thing is done is very different from the motives which may have actuated those by whom it is done, and is, in the present instance, a legitimate subject of judicial investigation, for the right to exercise the power of eminent domain is in all cases limited by the purpose for which it shall be exercised—as thus, private property may be condemned for public use, but it may be shown that the use in fact is not public, but private. . . . . A railroad company, under authority to condemn property for its right of way, cannot condemn property for a street of a city and . . . . a city cannot, under authority to condemn property for streets, condemn property for a railroad track, for the principle must be the same."

The facts of the case at bar illustrate forcibly the necessity for the admission of evidence of the kind offered by the defendant.

To the city council the State has delegated the power to condemn land for a public use, it has no power to condemn for a private use; "public" in that connection means everybody; if the use is not for everybody it is a private use; if to an individual, or to any number of individuals, is given the right to use the property in such manner as will practically exclude the general public, it is a giving of the property to private use and a destruction of its public-service character.

Now, suppose an influential individual, to whom a slice of his neighbor's property would be very convenient, should ask the city council to condemn that property for his use and the council should pass an ordinance as requested declaring that it condemned the property for the use of the individual; of course the ordinance would be void, on its face. But suppose the council, intending the condemnation to be really for the sole benefit of the individual, in order to give it validity should say in the ordinance that the property was to be condemned for a public street, would such a false re-

cital in the ordinance be conclusive, would it put the man whose property was to be taken, and the people in the district who were to be taxed to pay for it, beyond the protection of the constitutional guarantee that their property should not be taken for private use? Could the city council by a false recital in the ordinance give it a validity which it would not have if it recited the truth? And when the city comes to ask the aid of the court to carry the ordinance into effect, is it possible that the court must be a mere tool to do the will of the council with no power to enquire into the truth of the matter? What protection has a citizen for his constitutional rights if the courts cannot look through a sham and see the truth, and how can the courts learn the truth if they must take the recitals in the ordinance as conclusive and reject all evidence to show their untruth? What a reproach it would be to our system of jurisprudence and how humiliating would be the attitude of our courts if they were so powerless. But our law is not so lame and our courts not so impotent. The courts in such case will hear the evidence and find the facts. If the truth lies only in an unwritten agreement or understanding it can be proven only by oral testimony, and that being the best evidence of which the fact is susceptible the court must receive it and weigh it.

Defendant in such case is not driven to a suit in equity to reform the ordinance or assail its integrity. This is a summary proceeding, no pleadings are prescribed by the charter or by statute, and the party has a right to demand that the court hear the evidence and find whether or not the purpose of the proceeding is to condemn his property for a public use or for the use of an individual or individuals.

If as the defendant offered to prove the real purpose for which these ordinances were passed was to make a way for a switch track or switch tracks to property of an individual or any number of individuals,

then it was a purpose for which the city council had no authority to condemn property and the passage of the ordinances was an abuse of its power, and the court should adjudge the ordinance void.

But even if switch tracks are not intended and will not be laid in the streets, still on what possible theory can it be said that this defendant will be benefited by the opening of this street through his land? It gives him no connection that he has not already, and it cuts him off from his connection with the right of way of the Belt railway.

The only change in his situation besides that of depriving him of a large slice of his property will be to put him at the mercy of the city council if he should ever want a switch track into his premises connecting with the Belt railway.

It is said in behalf of respondent that no pleadings were filed alleging that this was a proceeding to condemn private property for a private use, and that therefore there is no such question in the case. Under the provisions of the city charter prescribing the procedure in such case, formal pleadings are not required. Nevertheless, the defendant in this case did file what is called a motion, averring that the ordinance was invalid for several reasons specified, among which was that it was a proceeding to take his property not for a public, but for a private use and prayed that the suit for those reasons be dismissed, which motion the court overruled without hearing evidence and defendant excepted.

It is true as contended by respondent that the jury was not impaneled to try any questions except those relating to the damages and benefits, and therefore except as bearing on those questions the jury had nothing to do with determining whether this was a proceeding in good faith to condemn property for a public street, but that was a question addressed to the court, on which the court ought to have heard the evidence offered, and if satisfied that it was a proceeding to condemn the

property of the defendant for the use of one individual or individuals it ought to have rendered judgment for defendant dismissing the proceeding. The court could have tried that issue before impanelling the jury or during the jury trial or afterwards as it might see fit to do, since there is no particular procedure prescribed in the charter or elsewhere.

For the reasons above given the judgment is reversed and the cause remanded to the circuit court to be proceeded with according to the law as hereinabove expressed.

All concur.

*Lathrop, Morrow, Fox & Moore* for appellant.

*Edwin C. Meservey* and *John H. Thacher* for respondent.