STATE OF MISSOURI EX REL. STATE HIGHWAY COMMISSION OF MISSOURI, Relator, v. Honorable CLAUDE E. CURTIS, Judge of the 19th Judicial Circuit of Missouri and of the Circuit Court of Pulaski County, Respondent, No. 41337—222 S. W. (2d) 64.

Court en Banc, June 13, 1949.

Rehearing Denied, July 11, 1949.

*Phil M. Donnelly, Lue C. Lozier* and *Wilkie Cunnyngham* for relator.

404

*Claude T. Wood* for respondent.

CLARK, J.—On application of the State Highway Commission, relator, we issued our alternative writ of mandamus to require respondent circuit judge to accept jurisdiction of all issues tendered in relator's condemnation petition pending before respondent as judge of the circuit court of Pulaski County, or to show cause for his failure to do so. Respondent has filed his return and the case is brought to issue by relator's motion for judgment on the pleadings.

Relator's condemnation petition is in conventional form, describing certain parcels of land with the names of the owners; reciting the preliminary steps taken and stating that it is necessary for the proper and economical construction and maintenance of some 5.5 miles of U. S. Highway 66 in Pulaski County, known as the Waynesville By-Pass, that all the lands and rights described in the petition shall be condemned. Reference is made to a map and plan filed with the county clerk and attached to and made a part of the petition.

The road to be constructed is to be a "limited access" highway with two 26 foot divided pavements, one for westbound and the other for eastbound traffic. It is to be a continuation of an existing divided roadway. According to the plans the extension is to be built under two contracts, the south lane to be built first, though right-of-way is being now sought for the entire project.

Some of the defendant landowners filed a motion to require relator to file a bill of particulars which was sustained in part by respondent, requiring relator to set forth "definitely and in detail, the uses and purposes which relator proposes to make of the lands of these defendants which are being taken herein and which are shown by plaintiff's plans on file with the county clerk not to be used by relator for construction of the roadway mentioned in the petition."

Relator filed a bill of particulars stating that the uses and purposes which relator proposes to make of the property, which the present plan on file with the county clerk do not positively show will, at this time, have placed upon it any of the first construction of the first roadway, are to provide an adequate and necessary safety factor for all contingencies and developments in the construction, reconstruc-

tion, improvement and maintenance of the entire ultimate highway, "which may be reasonably anticipated, but which it is impossible at this time to foresee fully and to state and set forth definitely and in detail." Then in eight paragraphs the purposes are further set out as to provide room for men and machinery in the present and future construction and maintenance; room for such changes as may be necessary because of rock, slides, drainage, etc.; room for such changes as may become necessary because of future changes in design, size, weight and speed of vehicles and in traffic laws and customs; room to take care of erosion problems, sight distances, public utility installations, and to prevent the erection of dangerous structures too close to the highway.

Then defendants filed a motion to strike from relator's petition "all that portion of the lands of these defendants (or the 'easements for right-of-way' over lands of these defendants), which relator's present plans on file with the County Clerk do not show will be used for the construction of a roadway, which are not shown to be needed for immediate use, and which are not covered as a part of the contemplated road construction set out in the plaintiff's plans filed with the County Clerk as required by law, and as grounds for this motion, these defendants state:

"1. That an intended present public use of said portions of said lands is not shown by relator's Petition, Bill of Particulars, or Plans.

"2. That it appears from relator's Bill of Particulars that relator seeks to acquire said portion of said lands for some vague, indefinite and speculative use or purposes.'

"3. That it fails to appear from relator's Bill of Particulars, Petition or Plans that relator is legally entitled to condemn said portion of said lands in this action."

Respondent judge then entered an order in which he found "that said petition and bill of particulars and plans when considered together affirmatively show on their face that, in addition to the land which the plaintiff-condemnor alleges that it needs for the public use pleaded, also show other and additional land included in the description in the petition which the condemnor does not even propose to use, either now or at any ascertainable time in the future, for the purpose of constructing thereon a highway and the appurtenances thereto or for any other public use known or recognized by the courts."

Respondent questions our jurisdiction to proceed in mandamus on two grounds: first, that he exercised sound judicial discretion in determining that relator's petition, plans and bill of particulars do not show a public use for all the lands sought to be condemned; second, relator has an adequate remedy by appeal.

Article V, Section 4, of the State Constitution, gives this court superintending control over lower courts and power to issue and determine original remedial writs. Mandamus is a proper writ to

compel a circuit court to exercise its rightful jurisdiction. [State ex rel Fielder v. Kirkwood, 345 Mo. 1089, 138 S. W. (2d) 1009.] In effect, respondent refuses to try any of the issues in the condemnation suit because he has determined, in a preliminary way, that an undefined portion of the described land is not sought for a public purpose. While mandamus is a discretionary writ, we think it is proper here and that appeal would not be an adequate remedy.

We think respondent is mistaken in his view that Section 27 of Article I of the Constitution is involved in this case, and also that he fails to fully recognize the distinction between "public necessity" and "public use" as those terms are material in condemnation proceedings.

Section 27 of Article I provides for the condemnation of property "in excess of that actually to be occupied by the public improvement or used in connection therewith" and authorizes the condemnor to sell the excess, the appropriation and sale to be governed by such limitations as may be provided by law. ·

In this case relator is not seeking to take property in excess of that to be "used in connection" with the public improvement. Relator's petition and bill of particulars allege that all the property sought to be taken is necessary for purposes of construction, drainage, safety and other purposes specifically set out. True, not all the property is to be actually occupied by the highway, nor is all the contemplated improvement to be immediately constructed. But Section 29 of Article IV of the Constitution expressly authorizes the State Highway Commission to construct "limited access" roads, and Section 8759, Revised Statutes Missouri 1939, [Mo. R. S. A.] vests the Commission with authority to institute proceedings to condemn lands for right-of-way and "for any other purpose necessary for the proper and economical construction of the state highway system" etc. [See State ex rel Highway Commission v. James, 356 Mo. 1161, 205 S. W. (2d) 534, and cases cited.]

Although the entire road is not to be constructed at once, the petition alleges that it is all a part of a general plan adopted by the Commission whereby the remaining portion will be constructed in the near future. This authorizes the appropriation of land for the entire project now. Kansas City v. Hyde, 196 Mo. 498, l. c. 505, 96 S. W. 201: "If the opening or extending of a particular proposed street is but a part of a general scheme, the court should know what the scheme is in order to appreciate the value of the particular street in question. That scheme may be shown by contemporaneous ordinances if it has been put into that record form, or it may be shown by the best evidence of which the fact is susceptible, if it has not been made a matter of record." That statement in the opinion, written by Judge Valliant in Division One, was somewhat modified in a later banc opinion by the same judge in Kansas City v. Frisco Ry., 230

Mo. 369, 130. S. W. 276, but the modification does not affect Kansas City v. Hyde as a precedent in the instant case. In the Hyde case the fact that the city intended to connect the proposed street with other streets was evidenced by another suit then pending for that purpose. In Kansas City v. Frisco Ry., supra, the city attempted to prove by oral evidence that it intended to connect up the proposed street by building a viaduct in the near future, but no official action had been taken looking toward the construction of the viaduct and, in fact, the city was unable under its charter to take action at that time because of lack of funds. The court held such evidence was inadmissible and that intention to complete the second project must be evidenced by some official action, and that that part of the quoted statement in the Hyde case, indicating that oral evidence would be sufficient to show such intention, should be disregarded as obiter dicta.

In the instant case, according to the petition, the intention to complete the entire project is shown by the official action of the Commission. In fact, there is only one project here which contemplates the construction of both lanes though the construction of one is to be somewhat deferred. We hold that the allegations of the petition and bill of particulars are sufficient to authorize the appropriation of the land necessary for the entire project. [29 C. J. S., p. 890, sec. 92.]

As we understand respondent's brief, he contends that relator's petition shows that it is attempting to take more land than reasonably necessary even for the construction of the road to be built now; that the excess of land over what is so reasonably necessary will not be taken for public use; that the question of "public use" is a judicial question which respondent had jurisdiction to determine from the petition and bill of particulars, and that it was incumbent on relator to show such public use by its pleadings.

In condemnation cases, whether or not land is being taken for a public use is a judicial question regardless of any legislative declaration that the use is public. [Mo. Const., art. 1, sec. 28.] Such question may sometimes be determined from the pleadings. [State ex rel Cape Girardeau v. Engelmann, 106 Mo. 628, 17 S. W. 759.] But the public necessity or propriety for the exercise of eminent domain is a legislative or political question and is not the same as "public use." [City of Kirkwood v. Venable, 351 Mo. 460, 173 S. W. (2d) 8; State ex rel. Lane v. Pankey et al., 358 Mo. 118, 221 S. W. (2d) 195, adopted May 13, 1949.] The power to locate a state highway, to determine its width, type of construction and the extent of land necessary for economical and proper construction are vested in the sound discretion of the State Highway Commission, uncontrolled by the courts except to compel strict compliance with the statutes and to prevent the taking of private property for a private or non-public use. The Commission must comply with the statutes which it did in this case by filing its petition and plans showing its decision to appro-

priate certain described land for certain purposes, to wit, for the construction of an extension to an existing state highway. That is an allegation that *all* the land is being taken for a public use and, while the allegation does not prove itself [Kansas City v. Hyde, 196 Mo. 498, 96 S. W. 201; City of Kirkwood v. Venable, 351 Mo. 460, 173 S. W. (2d) 8] it certainly does not authorize the respondent judge to hold, without evidence, that an indefinite and undescribed portion of the land is being taken for a non-public use.

The Commission has large discretion to determine the extent of land to be taken and is not limited to a taking of the actual roadbed. It may determine what land is reasonably necessary for proper and economical construction and for the purposes outlined in relator's bill of particulars.

In determining the question of "public use," when that question is properly raised, a court may inquire into whether the public purpose stated is the real purpose or merely a sham. [Kansas City v. Hyde, supra.] In that case the city was proceeding under an ordinance for the opening of a public street. Objecting landowners raised the issue that the real purpose was not to open a street for the use of the public, but to provide a way for switch tracks to the property of the president of the board of aldermen and for his sole private use. That raised a question of fraud which, under proper allegations, a court may always consider.

Even in the absence of actual fraud, a taking of property in the ostensible behalf of a public improvement in excess of what by any possibility could ever serve any public purpose would to that extent be a taking for a non-public use, [18 Am. Jur., pp. 734, 736, secs. 107, 109] but the courts uniformly hold that the greatest weight must be given to the judgment of the delegated agents of the State as to the amount of property which should be appropriated.

In the instant case it is not denied that relator is entitled to take some of the land described in its petition. On the face ▮ of its petition and bill of particulars, relator is authorized to appropriate *all* the land described. If it is attempting to take *more* land than will ever be proper for any of the purposes mentioned, it is incumbent upon objecting landowners to point out and describe the excess.

Most of the cases cited by respondent are from other states. We have read those which are emphasized or quoted from in the argument portion of respondent's brief. Kentucky and Louisiana courts, under statutes differing from ours, seem to hold that the necessity for appropriation of land by eminent domain is a judicial question. We find nothing in other cases cited by respondent which differs from the view which we have herein expressed.

We hold that respondent judge should exercise jurisdiction to determine all the issues in the instant case, and to that purpose our alternative writ of mandamus is hereby made permanent. All concur.

On Motion For Rehearing.

██ PER CURIAM:—Respondent's motion, designated as a motion for rehearing, is, in reality, a motion to modify the opinion in one respect only. The motion does not attack any of the conclusions of law which we have reached in the opinion, but asks us to modify our writ of mandamus so as to eliminate the provision directing him to appoint commissioners. He argues that this provision may possibly preclude the objecting landowners from raising the question that some part of the land is not being sought for a public use.

We hold that it is unnecessary to modify our writ. Certainly respondent and the objecting landowners must concede that some of the land is being properly sought for a public use and commissioners must be appointed to ascertain and assess the damages.

██ Relator has filed suggestions in opposition to respondent's motion, but also asks us to modify our opinion "so there can be no contention by anyone that it authorizes a judicial review of the State Highway Commission's legislative acts in determining just what land is necessary for the proper and economical construction of a state highway, that is, of course, in the absence of any allegation and proof of fraud or bad faith."

That is exactly what the opinion holds except that we go a step farther and hold that the decision of the Commission [or any other administrative agency] may be judicially questioned not only for fraud or bad faith, but for an arbitrary and unwarranted abuse of discretion.

In this case the Commission is condemning land for the construction of an extension to a state highway. That, of course, is a taking for a public use. The necessity for such taking and the extent of land to be taken rests in the *sound* discretion of the Commission and is not a judicial question.

"The amount of land required for street purposes is a matter of discretion to be determined by the legislative authority . . . and such discretion, at least if not abused or arbitrarily exercised, is not subject to judicial review." [City of St. Louis v. Senter Com. Co., 336 Mo. 1209, l. c. 1227, 84 S. W. (2d) 133.]

In exercising its discretion the Commission is not limited to the taking of only so much land as is actually necessary for the construction of the road, but may be governed by the purposes stated in its bill of particulars and which are set forth in our opinion.

In this case *all* the land sought to be taken is presumptively necessary for the public uses mentioned in relator's petition and bill of particulars. If the Commission is arbitrarily abusing its discretion by attempting to take land which can never, under any contingency, be used for any of such public purposes, the burden is upon the objecting landowners to allege and prove such abuse. So far their objections have not effectively raised that issue.