STATE of Missouri ex rel. STATE HIGH-
WAY COMMISSION, Plain-
tiff-Respondent,

v.

Richard R. RISS, Sr., Defendant-Appellant.

No. 53242.

Supreme Court of Missouri,
Division No. 1.

Sept. 9, 1968.

Motion for Rehearing or to Transfer to Court
En Banc Denied Oct. 14, 1968.

Robert L. Hyder, Jefferson City, Earl H. Schrader, Jr., Tom M. Raimo, Frank O. Benson, Kansas City, for plaintiff respondent.

Edgar S. Carroll, Kansas City, for defendant-appellant, Popham, Thompson, Popham, Trusty & Conway, Kansas City, of counsel.

WELBORN, Commissioner.

Condemnation action by State Highway Commission for highway right-of-way. Condemnation commissioners awarded defendant-appellant Richard Riss $66,000 for 29.26 acres taken from a 680-acre tract owned by Riss in Platte County. On trial of exceptions of both the Highway Commission and the landowner, a jury awarded the landowner $125,000. The landowner's evidence was of minimum damages of $1,342,500, and he appeals.

The right-of-way sought was for the extension of State Route 45, from its junction with Route 9, one-half mile north of Parkville, eastward to U. S. Route 71 and Interstate 29, a distance of 2.379 miles. The right-of-way extended across the Riss property some 4800 feet, varying in width from 185 to 310 feet. Included in the right-of-way on the Riss property was a 2.38-acre tract for the relocation of a county road at its intersection with the new highway.

A major point of contention at the trial and on this appeal relates to the effect of the construction of the proposed highway upon Riss Lake. Riss Lake was formed by the construction of an earthen dam across White Aloe Creek, near the southwest corner of the Riss tract. Richard Riss testified that he had acquired the acreage and constructed the dam in furtherance of development of the tract for lakeside residential purposes. The dam was planned to rise to 911 (subsequently changed to 908) feet above sea level, with the projected normal water level at 906 (subsequently changed to 902) feet. Construction of the dam began in 1957 and by 1962 it had been built, with some 1,400,-000 cubic yards of compacted material, to a minimum height of 892 feet above sea level. However, a two-foot steel pipe spillway at the 874.3-foot level, limited the lake level, ordinarily, to that height. At such level, the lake covered 194 acres and had a shore line of six miles.

The projected highway would cross the upper reaches of the lake, with 174 acres of lake between the center line of the roadway and the dam and 20 acres of lake area above the roadway center. The shore line would be 1½ miles above the roadway and 4½ miles below.

With the lake at the 900-foot level, the lake area below the roadway would have been 208 acres and above it, 48, with shore line of 5½ and 3½ miles, respectively.

The plans called for the highway to cross the lake on an earth embankment at the 890-foot level. Tubes, two 78″, one 54″ and one 48″, were to be built into the em-

bankment in order to permit water from the upper level to flow into the lower level.

Although Riss did own all of the shore line area of the lake at the 874.3-foot level, any substantial raising of the water level would cause the water to back up on land owned by others. Riss contended that he had agreements with all such landowners to permit flooding of their land to the 900-foot level. At the trial, written agreements to such effect from a number of landowners were produced. However, on June 30, 1964, before this present action had been filed, the Highway Commission purchased for $50,000 the fee simple title to a 40-acre tract, adjacent to the near extreme northeast corner of the Riss tract. The sellers of the tract were Lewis and Ann Elizabeth Klamm, and the tract became known as the "Klamm tract." A portion of the right-of-way for the new highway ran along the south boundary of the Klamm tract, a width of some 135 feet. More importantly, however, any increase in the lake level, at least above 877 feet, would have produced flooding on the Klamm tract and the commission's petition in condemnation specifically limited Riss's right to flood the right-of-way across the lake to a level of 877 feet. The commission asserted that the Klamm tract was purchased because of the location of the highway thereon and because the land was needed for fill and also candidly states that one objective of its purchase was to limit the level of Riss Lake.

The Klamm tract purchase is the principal basis for the appellant's contention that the plans of the Highway Department for the highway were so arbitrarily and unreasonably conceived and executed "as to destroy and limit the value of defendant's property, without hope of just compensation, thereby violating defendant's constitutional rights."

An earlier petition in condemnation, covering all property required by the project, including that owned by Riss and the Klamms, was voluntarily dismissed as to

them by the Highway Commission. In its memorandum, filed March 30, 1964, dismissing as to Riss, the commission stated: "[I]t is now necessary that the Highway Commission amend its previous resolution concerning the location and construction of Route 45 (Platte County) or adopt a new and substitute resolution authorizing changes in grade and elevation and the acquisition and appropriation of certain water rights belonging to defendant, RICHARD R. RISS, SR., et al, and for the further reason that new detail plans will have to be prepared by the Chief Engineer, approved by said Commission and filed of record in this court showing and describing the necessary changes proposed to be made concerning Route 45 (Platte County) and as they concern and relate to the property and rights now owned by Defendant Riss * * *."

Upon the refiling of the action against Riss alone on September 30, 1964, the defendant moved to dismiss the petition. A hearing was held on the motion and findings of fact and conclusions of law made by the court in overruling the motion. That ruling is now asserted to have been erroneous.

 We find some difficulty in relating the assertions in support of the assignment of error to the motion presented to and ruled upon by the trial court. A further problem is presented by the absence in the transcript on appeal of the record of the hearing on the motion. For the most part, factual allegations now asserted were presented, insofar as found in the transcript on this appeal, in the form of offers of proof on the issue of measure of damages. The motion to dismiss, while asserting that the acts of the commission were arbitrary and capricious, proceeded primarily on the theory that the original proceeding was dismissed in order to permit negotiations between the commission and Riss, looking to some change in the plans for the project. There was also an allegation of an agreement about "a joint and concerted action to acquire a certain

forty acre tract." The trial court found that there were discussions between Riss and the commission subsequent to the dismissal of the first action, but that their nature was unclear. There was no finding as to any agreement, and the appellant does not here assert that there was an agreement between him and the commission about the purchase of what was presumably referred to in the motion as the Klamm tract. Appellant does point to his offer of proof that the Klamms had previously offered the 40-acre tract to him for $20,000 and that the commission purchased the tract for $50,000 the day before Riss's attorney planned to offer the Klamms $30,000 for it. However, we fail to find that such action on the part of the commission would be evidence of such arbitrary action as would, in effect, invalidate the plans for the project. The trial court found that the Klamm tract was purchased because a portion of it was required for right-of-way, because there was need for borrow or fill from the tract and, finally, to control the lake level. Appellant suggests that the testimony that fill would be needed from the Klamm tract "does not seem to be borne out by the requirements of the plans," but his offer of proof acknowledged that a commission witness testified that the tract was bought for, among other things, use for fill. We accept the trial court's finding that such was one of the objects of the purchase.

Appellant attacks the Klamm purchase as an arbitrary act on the part of the commission to prevent his carrying out his projected lake at the 900-foot level. Again, in this area, we are in the realm primarily of offers of proof. However, in any event, appellant does not point to any prohibition of law which prevented the acquisition by the commission of the tract. The design for the highway had involved a roadway at the 890-foot level. Had the commission not been in a position to restrict the lake below that level, the cost of the project might well have been increased far in excess of the expenditure for the Klamm tract.

■ The argument that the plan for the project was arbitrary because, having acquired that tract, the highway could have been relocated to avoid crossing the lake, is in face of the well-established rule that a determination of the location of a highway is, by the Constitution (Art. IV, § 29, Constitution of Missouri, 1945, V.A.M.S.), entrusted to the sound discretion of the commission. State ex rel. State Highway Comm. v. Curtis, 359 Mo. 402, 222 S.W.2d 64, 68 [5–7]; State ex rel. State Highway Comm. v. Elliott, Mo.Sup., 326 S.W.2d 745, 750 [1]. The argument that a bridge should have been used instead of a causeway across the lake is likewise met by the well-established rule as to the proper roles of the Highway Commission and of the courts in passing upon their acts. The fact that, contrary to the recital in the stipulation for dismissal of the original petition, there was no change in the plans for the new roadway, does not demonstrate that the commission acted in. bad faith. We find no such arbitrary and unreasonable action (State ex rel. State Highway Comm. v. Curtis, 359 Mo. 402, 222 S.W.2d 64, 69 [14]) as would justify judicial interference with the commission's action.

Appellant's second contention relates to the trial court's refusal of evidence of damage based on a lake level in excess of 877 feet and to the withdrawal instruction of evidence of damage, based upon a higher lake level. Appellant acknowledges that his contention on this issue is "closely tied to the purchase by the Highway Commission of the Klamm tract."

■ The evidence would have justified a finding that Riss's plans envisioned a lake at around the 900-foot level. At that level, the lake would have encroached upon the land of others. Appellant contends that his evidence would have justified a finding that all such landowners had consented to such encroachment. He acknowledges that, insofar as the Klamms were concerned, his claimed right must be based upon either oral consent of the Klamms or estoppel. However, the Klamms were not the own-

ers of the 40-acre tract at the time of the taking, the time at which damage must be determined. State ex rel. State Highway Comm. v. Bowling, Mo.Sup., 414 S.W.2d 551, 555 [5–8]. Appellant, other than arguing that the commission's acquisition of the Klamm tract was an "arbitrary and intentional act of the plaintiff overreaching the public interest," has not purported to show how the claimed license from the Klamms bound the Highway Commission as a subsequent purchaser of the land. The argument about the commission's acquisition is, on this point, the same as that on the first. Again, appellant points to no prohibition against the commission's acquisition of the tract.

■ Appellant argues that the act of the commission prevented appellant's making the highest and best use of his property, i. e., development as a lake site with a lake at the 900-foot level. This may be true, but, unless appellant was in a position by virtue of his status as an owner of land and rights in connection therewith, to have carried out such development at the date of the taking, the act of the commission does not enter into the computation of damages appellant sustained. This case differs from the case of In re Inwood Hill Park, in Borough of Manhattan, 230 App. Div. 41, 243 N.Y.S. 63, affirmed 256 N.Y. 556, 177 N.E. 138, cited by appellant. In that case the condemning authority sought to prevent evidence of damages based upon the highest and best use of the land for apartment purposes. The condemning authority sought to exclude such evidence on the grounds that, by virtue of its governmental power, it would not permit the use of the property for apartment purposes. The court held that the city's position was untenable. Here, the problem of appellant is that, as of the date of the taking, he had no right by virtue of his ownership of property affected by the condemnation to put the property to what he now claims was its best use, i. e., a lake development at the 900-foot level.

■ Appellant also complains of the withdrawal instruction which the court gave, limiting damage to an 877-foot lake. In view of our conclusion above, such an instruction was proper. The objection that the instruction given was confusing and misleading was not raised below, either by objection to the instruction when given or by the motion for new trial. Therefore, that matter has not been preserved for review. Miller v. Gulf, Mobile & Ohio R. Co., Mo.Sup., 386 S.W.2d 97, 102 [7].

Appellant's next point relates to the exclusion of testimony offered by way of an expert appraiser-witness. Mr. Robert Steinhilber testified on behalf of appellant. According to appellant, the witness had "very exceptional qualifications" for valuing a lake-centered residential development. The witness was experienced in the handling of such developments and was undoubtedly an expert in the field. He testified on behalf of the appellant that the before-taking value of the Riss property, valued for use as a high-type residential development, was $2,039,000 and the after-taking value was $697,000. We need not here detail the factors which the witness took into consideration in arriving at both figures. He did explain in his testimony, in considerable detail, the basis for his figures.

Mr. Steinhilber testified that his before-taking figure was the price which, in his opinion, a contractor-developer would pay for the entire tract in its undeveloped state. (The tract was undeveloped, without roads, and it was unplatted.) The witness testified that the tract was adapted to division into three areas. The first would have been lakefront property, the second, lakeview, and the third, lake subdivision lots. He testified that he took into consideration the area which would be required for roads, if the tract were developed. The witness was asked whether he had computed the acres that would be available for lots in the three categories into which the tract might be divided, after providing for streets and eliminating unsuitable property.

Respondent's objection, on the grounds that the witness could not, in view of the undeveloped state of the property, divide the tract into lots and arrive at a value, based upon the selling price of the lots, considered in the light of the cost of development of the tract, was sustained. Thereupon, appellant's counsel made an offer of proof, to which objection was sustained, set out in his brief as follows:

"[D]efendant's attorney made an offer of proof to show by witness Steinhilber and another appraiser that the appropriate method of arriving at the market value of specialized property such as the lake property here involved would be to determine the amount of ground in each of the three aforementioned categories which are available for sale after the development of the tract. Since there are no comparables for the sale of an entire 680-acre tract of land with a lake thereon, the appropriate way to arrive at the market value is to determine the number of lots of each type which could be developed and sold before the taking, and the number that could be developed and sold after the taking."

■ The court's ruling on the offered testimony is the subject of the assignment of error here. The contention is that the "capitalization method" of valuation which the witness proposed to use was the proper method of valuing the property because of its unique characteristics. According to appellant, there were no comparable sales in the Kansas City area of an undeveloped 680-acre tract with a lake on it. Neither side introduced evidence of any wholly comparable sales. However, the use for which the tract was adapted was not unique. The value of the tract for residential purposes would undoubtedly be enhanced by the presence of a lake. However, that does not call for a capitalization method of valuation. In the cases cited by appellant, such as City of St. Louis v. Union Quarry & Construction Co., Mo. Sup., 394 S.W.2d 300, and State ex rel. State Highway Comm. v. Barbeau, Mo.Sup., 397 S.W.2d 561, there was an existing use of the property of a limited and special nature which precluded proper valuation by traditional methods. In the Union Quarry case, the property condemned was an abandoned quarry used as a dump. In the Barbeau case, the property taken was part of a cemetery. Neither case involved a theoretical use, with a theoretical income. Both were cases of actual use and actual income based thereon, so that valuation by the capitalization method was possible and proper.

The answer to the appellant's objection in this case is found in In re Armory Site in Kansas City, Mo.Sup., 282 S.W.2d 464, 471–473 [16–21]. Under the rule there laid down, the trial court properly rejected the offer of proof.

Appellant's next objection relates to the testimony of the respondent's appraiser-witness, Mrs. Weir. Her testimony is attacked on the grounds that she was not qualified to express an opinion on the value of the property involved, that her opinion was based upon sales of property in no way comparable with the Riss tract, and finally that she took general benefits into consideration in arriving at her value opinion.

Mrs. Weir had been familiar with the Riss tract since 1925 when she first came to Platte County. She had been in the real estate business since 1938 and had handled the purchase and sale of "a great number of properties in Platte County." She handled sales of all types of property. Since 1958 she had been in the appraisal business and had made appraisals for numerous clients, including the Highway Commission in other cases. She was Chairman of the Platte County Board of Zoning Adjustment and a member of the Platte County Park and Recreation Commission.

Appellant acknowledges the general qualifications of the witness, but contends that, since she admittedly had never sold an entire lake development tract or participated in the development of a lake subdivision, she was not qualified to express

an opinion on the value of the Riss property. The opinion which she expressed, over appellant's objection, was that the tract had a before-taking value of $463,500 and an after-taking value of $443,000.

■ We are of the opinion that the witness was qualified to express her opinion. The guides for determining the qualifications of a witness in a case such as this are fully set out in State ex rel. State Highway Comm. v. Bloomfield Tractor Sales, Inc., Mo.App., 381 S.W.2d 20, 23–25 [1–7]. That case was quoted from with approval by this court in State ex rel. State Highway Comm. v. Barron, Mo., 400 S.W. 2d 33, 36–37. Fundamentally, determination of the witness's qualifications is a matter for the trial court. "If the witness knows or has inspected the property, and if he has such information, knowledge and skill which enable him to form an intelligent judgment, and if this knowledge and information is superior to that possessed by the ordinary person who composes the jury, then he should be permitted to testify." State ex rel. v. Bloomfield Tractor Sales, Inc., supra, 381 S.W.2d 1. c. 24 [3–5]. We cannot say that the trial court's conclusion that Mrs. Weir met this test was an abuse of discretion or a clear error of law. The fact that she had never actually handled the sale of an entire lake development would not require her disqualification. The tract was best suited for residential development. The witness took into consideration the impact of the lake upon its value for such purpose. She was familiar with sales of residential lots in other lake developments in the area. We find no such showing as would justify our holding erroneous the trial court's determination of the witness's qualifications. In Shelby County R–IV School District v. Herman, Mo.Sup., 392 S.W.2d 609, cited by appellant, this court found no error in a trial court's ruling excluding testimony from appraiser-witnesses whom he found not qualified. However, that case merely is illustrative of the approach of this court to the review of such matters, and our

deference to the trial court's action. It is no authority in support of the proposition that the trial court's ruling in this case was error.

■ The objection to Mrs. Weir's testimony about the sales of comparable land which she relied upon in arriving at her value testimony is in the same position. Again, we are not dealing with absolutes. The discretion of the trial judge is again involved. State ex rel. State Highway Comm. v. Koberna, Mo.Sup., 396 S.W.2d 654, 662; State ex rel. State Highway Comm. v. Hamel, Mo.Sup., 404 S.W.2d 736, 739 [6–11]; City of St. Louis v. Vasquez, Mo.Sup., 341 S.W.2d 839, 850 [26, 27]. Appellant objects specifically to testimony by Mrs. Weir about sales of tracts of 120, 133 and 200 acres. Appellant points out that none of the tracts she referred to involved lakes and urges that the properties in such transactions "were not at all comparable in size or use to the defendant's property." The tracts were smaller, but sales of tracts the size of the Riss tract were not to be found. This witness pointed out that the size of the Riss tract would lessen somewhat its per acre value, inasmuch as developers were not ordinarily interested in tracts of such size. The tracts were sold for residential development. What use was being made of them at the time of sale does not appear. Appellant describes the tracts as "farm land," but we find no support in the transcript for such description. In any event, they were sales of undeveloped property for residential purposes, which is what the theoretical buyer of the Riss property would have been interested in. We do not find the property considered so lacking in similarity in size or use to the Riss property as to make the trial court's overruling appellant's objection grounds for reversal. State ex rel. State Highway Comm. v. Koberna; State ex rel. State Highway Comm. v. Hamel, supra. The argument that the tracts in question were not comparable in value to the Riss tract necessarily presupposes the answer to the issue which this action involved

and affords no basis for declaring the trial court's ruling erroneous.

■ Appellant's final objection to Mrs. Weir's testimony is that she took into consideration general benefits to the Riss property arising from the highway project in arriving at her after-taking value. At the most, the witness testified that she considered that damage to the potential lot area north of the roadway was outweighed by the fact that the better transportation which the road would provide would make the lots at the far north end more valuable. That was no more than a partial explanation of her post-taking value. If the testimony did amount to a valuation based upon the deduction of general benefits, any error in its admission was cured by Instruction No. 6, as authorized by MAI 30.-02. State ex rel. State Highway Comm. v. Bailey, 234 Mo.App., 168, 115 S.W.2d 17, 26 [18].

■ Appellant's final point that the verdict is not supported by competent evidence proceeds on the theory that his witness Steinhilber produced the only competent evidence of value. We have already concluded that Mrs. Weir's testimony was competent. It is substantial evidence, affording a basis for a verdict considerably less than that actually rendered. We will not disturb the verdict. State ex rel. State Highway Comm. v. Hamel, Mo., 404 S.W. 2d 736, 738–739 [2–5]. We do not, in any event, weigh the evidence, and therefore do not consider the allegation that the verdict was against the weight of the competent evidence.

The judgment is affirmed.

HOUSER, C., concurs.

HIGGINS, C., not sitting.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.