STATE of Missouri ex rel. Joseph C. NORTON, et al., Relators,

v.

The Honorable Fred RUSH, Judge of the Circuit Court of St. Charles County, Respondent.

No. 63453.

Supreme Court of Missouri, En Banc.

Aug. 23, 1982.

---

---

Robert V. Niedner, St. Charles, for relators.

Bruce A. Ring, Chief Counsel, John W. Koenig, Jr., Asst. Counsel, Kirkwood, for respondent.

BARDGETT, Judge.

On motion of respondent, after opinion by the Missouri Court of Appeals, Eastern District, this Court ordered the cause transferred.

Relators are owners of certain property in St. Charles County, portions of which the State Highway and Transportation Commission of Missouri (commission) seeks to condemn for a highway right of way by a petition for condemnation filed in the Cir-

cuit Court of St. Charles County. Relators, among others, are named defendants in that suit. The respondent circuit judge entered an order dated September 2, 1980, finding the commission is authorized by law to condemn and appropriate the property for a right of way as prayed for in the condemnation petition. The judge also prepared an order for entry September 5, 1980, for the appointment of commissioners to assess damages occasioned by the taking. However, relators requested time to apply for a writ of prohibition in the Missouri Court of Appeals, Eastern District, so the judge continued his order appointing commissioners to September 12, 1980, to allow the petition for the writ of prohibition to be filed. The petition was filed in the court of appeals. The court of appeals issued its writ and, after briefing there, the court made its writ absolute and this transfer followed.

Respondent judge is the nominal party to this proceeding. The real party in interest seeking to uphold the order of condemnation and defeat the writ of prohibition is the commission.

The petition seeks to acquire by condemnation for a highway right of way a strip about 1.228 miles long. Part of this strip appears to be located within the City of O'Fallon and part outside the city limits. Relator's property is located outside the city limits. The parties agree that the commission, by resolution agreed to and did designate this roadway as part of the state highway system. Relators do not agree that the commission's action legally accomplished that result so as to afford the commission the right to condemn relators's property for roadway use. To the contrary, relators's position is that the commission had no power to condemn this property for a highway right of way because, relators contend, the commission was merely acting as condemning agent for the City of O'Fallon and the roadway was not to be kept as part of the state highway system but was to be turned over to the City of O'Fallon as a city street.

The City of O'Fallon has the authority to expend a certain percent of its revenue to construct, maintain, etc., any public road, street, highway, or bridge leading to or from the city up to a distance of five miles from the corporate limits of the city. § 71.340, RSMo 1978. The proposed roadway in this case lies within the territorial limitations of § 71.340. Whether or not the city has, as a necessary adjunct to the authority granted by § 71.340, the power to condemn land for highway right of way outside the city limits is not an issue in this case.

The manner by which this roadway construction or improvement was to be done involves a cooperative effort by the commission and the city so as to utilize federal highway funds made available by Congress for improvement of roads, pursuant to the Federal Aid Urban Program, which includes, but is not limited to, §§ 103, 106, and 134, Title 23 U.S.C. (Pub.L., 91–605, 84 Stat. 1734, Fed. Aid Highway Act of 1970 and Pub.L., 93–87, 87 Stat. 250, Fed. Aid Highway Act of 1973), and Federal regulations implementing them, and §§ 4321, 4331–4335, 4341–4347, Title 42, U.S.C., the National Environmental Policy Act of 1969 (Pub.L. 91–190, 83 Stat. 852).

The terms of the agreement between the city and the commission are set forth in a "Federal Aid Urban Agreement" and a "First Supplemental Federal Air Urban Program Agreement" which are on file in this case.

The agreement recognizes the necessity under federal law for participation by the commission in an undertaking reference urban road improvements if federal funds are to be utilized in the project. In order to qualify for federal funds, the area in which the road construction is to take place must be included within an urban boundary map by an agency designated as East-West Gateway Coordinating Council, and this was done by the council. The agreement provides, among other things, that the commission will take into the state highway system the streets being improved and upon completion of the roads will relinquish to the city control and maintenance of those streets and highways improved under the

federal program. The city is required to maintain and regulate in a specified manner and is subject to commission approval regarding those matters.

The commission took the proposed roads into the state highway system. The commission had the power and authority to do so under the provisions of Mo.Const. art. IV, § 29, which states, "It [commission] shall have authority over and power to locate, relocate, design and maintain all state highways . . . ." The power to locate, etc., state highways is entrusted to the commission, *State ex rel. Highway Comm'n v. Riss,* 432 S.W.2d 193 (Mo.1968), and that discretion is not subject to control by the courts, *State ex rel. Highway Comm'n v. Shultz,* 241 Mo. App. 570, 243 S.W.2d 808 (1951).

Additionally, art. IV, § 30(b)(3)(d) provides that, "(3) In the discretion of the commission, to locate, relocate, establish, acquire, construct and maintain the following: (d) any highway within the state when necessary to comply with any federal law or requirement which is or shall become a condition to the receipt of federal funds; . . . ."

"State highway" is defined by § 226.010(6), RSMo 1978, as being, "a highway constructed or maintained at the cost of the state or constructed with the aid of state funds or the U. S. government funds, or any highway included by authority of law in the state highway system." By definition, the proposed improvement is a state highway and, pursuant to Mo.Const. art. IV, § 31, "[t]he commission may enter into contracts with cities, towns, counties or other political subdivisions for and concerning the maintenance of, and regulation of traffic on any state highway within such cities, counties or subdivisions."

The power to contract for maintenance, etc., with a political subdivision was upheld in *Floreth v. State Highway Comm'n,* 472 S.W.2d 614 (Mo.1971). The commission had the authority to enter into the "Federal Aid Urban Agreement" with the City of O'Fallon. The commission is mandated by § 226.150, RSMo 1978

. . . to comply with the provisions of any act of Congress providing for the distri-

bution and expenditure of funds of the United States appropriated by Congress for highway construction and to comply with any of the rules or conditions made by the Bureau of Public Roads of the Department of Agriculture, or other branch of the United States government, acting under the provisions of federal law in order to secure to the state of Missouri funds allotted to this state by the United States government for highway construction . . . .

*Davis Const. Co. v. State Highway Comm'n,* 141 S.W.2d 214 (Mo.App.1940), and most recently *State ex rel. Weatherby Advertising Co. v. Conley,* 527 S.W.2d 334 (Mo. banc 1975), have interpreted this statute to say that the commission does not only have the authority to do those things to qualify for federal funds but is directed to do so.

■ The effect of the foregoing constitutional and statutory provisions make it clear that the commission has the authority to designate the location of a state highway and to take such highway into the state highway system. The commission has done so in this case. Having designated the highway as part of the state highway system, the commission has the power to condemn land for the necessary right of way, which it properly proceeded to do here. The fact that the commission has contracted with the City of O'Fallon to relinquish the completed roadway to the city does not detract from its power to condemn but rather is in accordance with its power to enter into contracts with cities pursuant to Mo.Const. art. IV, § 31, and in doing so the commission was acting in accordance with its duty under § 226.150, RSMo 1978, to comply with any act of Congress, etc., providing for the distribution of federal funds "to secure to the state of Missouri funds allotted to this state by the United States government for highway construction."

■ Relators contend the commission lacked power to condemn because, allegedly, the commission did not locate the route with the mutual agreement of St. Charles County Court. The St. Charles County Court, it is argued, are the "local officials"

having charge of or jurisdiction over roads in the territory through which the supplementary state highway is to be constructed under Mo.Const. art. IV, § 29. The evidence does not support the assertion that the St. Charles County Court did not agree with the route designated. All it supports is that the county court would not agree to making a survey of the proposed right of way.

In any event, the City of O'Fallon has the authority under § 71.340, RSMo 1978, to construct, etc., any public highway up to five miles outside its corporate limits and the local officials of the city clearly agreed to the route. The point is overruled.

Relators argue that 23 U.S.C. § 103 (1976) does not authorize the commission to enter into an agreement with the City of O'Fallon for acquiring right of way for extension of a road into the county.

 23 U.S.C. § 103(d)(1) (1976) provides the routes "... shall be selected by the appropriate local officials so as to serve the goals and objectives of the community, with the concurrence of the State highway departments ...." The officials of the City of O'Fallon are appropriate local officials because they have the authority to construct and maintain the road up to five miles from the city limits under § 71.340, and consequently can enter into an agreement with the commission with respect to that roadway. *State ex rel. Russell v. State Highway Comm'n,* 328 Mo. 942, 42 S.W.2d 196 (banc 1931), cited by relators, is not in point. The Court in *Russell* held that portions of certain highways within Kansas City and St. Louis were excluded by the terms of a particular road improvement bond issue from that bond issue. Nor does *Russell* support the contention that the state highway system is limited to those roads specified in § 227.020. The roads specified by § 227.020 are required to be built by the commission as part of the state highway system but the system is not limited to those specific roads, *e.g.,* Mo.Const. art. IV, § 30(b), art. IV, § 32, and § 226.-150, RSMo 1978.

The relators also contend the Federal Aid Urban Agreement entered into by the commission and the City of O'Fallon does not authorize the commission to acquire right of way outside the city for extension of a city street.

The agreement provides the commission will take into the state highway system the portion of the city street or streets being improved. Again, the proposed road inside and outside the city is to be maintained, etc., by the city as provided in § 71.340 and the provisions of the agreement provide for the roadway, inside and outside the city, to be made part of the state highway system with the right of way to be acquired by the commission. The point is overruled.

The Court holds that the State Highway and Transportation Commission, under the Missouri constitutional provisions, the statutes of Missouri, and 23 U.S.C. § 103 (1976) had authority to take the proposed roadway into the state highway system, to condemn the right of way, and to contract with the City of O'Fallon for the subsequent maintenance and regulation of the roadway.

The preliminary writ of prohibition is quashed.

All concur.